#### IN THE

# COURT OF APPEALS

#### OF

# MARYLAND.

—⚬+⚬—

COURT OF APPEALS, (E. S.) JUNE TERM, 1820.

### WILMER vs. HARRIS.

<div style="float:right">Wilmer<br>vs.<br>Harris.</div>

APPEAL from *Queen-Anne's* county court. This was an action of debt instituted by the appellee against the appellant, on a writing obligatory, executed by *T. Harris, P. Wilmer,* (the appellant,) and *W. Wilmer,* to *E. Harris,* (the appellee,) on the 16th of July, 1810, in the penal sum of $9000, and reciting that "the said *E. Harris,* having loaned his notes to *H. Wilmer* for the sum above specified, for the purpose of obtaining an accommodation at bank for the said *H. Wilmer's* use; and for the purpose of securing and indemnifying the said *E. Harris* from all and every challenge, claim or demand, which may be brought, exhibited, or prosecuted against him, for or on account of the said accommodation, the said *T. Harris, P. Wilmer* and *W. Wilmer,* have agreed to execute this bond. Now the condition of the within obligation is such, that if the said *T. Harris, P. Wilmer* and *W. Wilmer,* do and shall at all times hereafter save harmless and keep indemnified the said *E. Harris,* his, &c. from all and every challenge,

*Where there is a judgment by default in an action on a bond with a collateral condition, there must be breaches suggested, and the damages assessed, as directed by the statute of 8 & 9, Wm. III, ch. 11, before an execution can issue against the defendant; and if it be sooner issued it will, on motion, be quashed.*

*If the breaches are stated in the declaration, and there is a judgment for the plaintiff on confession, by nil dicit, or on demurrer, they need not be again suggested to enable the jury to assess the damages; nor is such suggestion necessary where the judgment is for the plaintiff on the defendant's demurrer to a replication setting forth the breaches.*

Before the damages in such an action are assessed in the manner before stated, the judgment is only interlocutory.

The act of assembly of 1794, ch. 46, does not interfere with the statute of 8 & 9 Wm. III, ch. 11.

The admissions of an Executor or Administrator of a co-obligor, are not evidence against the surviving obligor in an action against him by the obligee.

JUNE 1820.

Wilmer
vs.
Harris.

claim or demand, which may be brought, exhibited, or pro-secuted against him or them, for or on account of his hav-ing loaned his notes to the said *Wilmer* for the sum speci-fied within, and from all costs, damages and expenses, he or they may sustain or be put to by reason thereof, then the within obligation to be void," &c. The defendant, on whom a rule was laid to answer the plaintiff's declaration, ne-glected to plead, and at October term 1813, a judgment was entered against him by default; and on the plaintiff's motion, the court ordered a proceeding in the nature of a writ of inquiry, to be executed at bar, at the succeeding term of the court, to assess the damages. Before the suc-ceeding term, the plaintiff issued a *ca. sa.* on the judgment thus rendered, and the defendant was taken in execution. At the return day of the writ, on motion of the defendant, the execution was *quashed*, and the defendant discharged. The plaintiff appealed to the court of appeals, and the proceedings were transmitted(*a*).    Notwithstanding this

(*a*) On the appeal here referred to of *Harris vs. Wilmer*, the opinion of the court of appeals, after hearing argument, was de-livered at June term 1817, by CHASE, Ch. J. The court are of opinion, that in expounding the statute of 8 & 9 *William* III, such a construction ought to be given to it as will remove the mischief intended to be redressed as to the defendants, and which will ad-vance the remedy of the plaintiffs, for the attainment of justice in the cases specified in the statute. The oppression complained of, as to defendants in suits on bonds or instruments, with collateral conditions, was, that a judgment was obtained by the plaintiff for the penalty, which greatly exceeded the damages sustained by the plaintiff by the breach of the covenant, and the defendant was compelled to go into chancery to restrain the plaintiff's executi-on to the damages actually sustained. The plaintiff's remedy was advanced, by permitting him to assign as many breaches of the covenants as the justice of his case might require. The sta-tute cannot be considered as giving an additional remedy to the plaintiff in the cases embraced by it—because such exposition would frustrate the intention of the makers, and defeat the princi-pal object of it—the relieving the defendant from the oppression of being forced into chancery to obtain a liquidation of the da-mages really sustained; but was intended to restrict the plaintiff to the remedy prescribed by it, whereby justice would be done to both parties more speedily and at less expense. In the opinion of the court, the statute is not confined to bonds where the con-dition is for the performance of covenants in another instrument; for certainly there is no difference whether the agreement is in-serted *verbatim* in the condition, or incorporated by reference to another instrument. In either case the condition is an agreement in writing. The statute having been made for the protection of the defendant as well as for the advancement of the remedy of the plaintiff, to prevent the defendant's being oppressed by the plain-tiff's rigorously exacting the penalty, and forcing him into chan-cery, the words "may assign" have been construed imperatively, *shall assign*, and "may suggest" *shall suggest*; and this to effec-tuate the intention of the makers, and to prevent the oppression complained of, Without doubt the statute embraces the present

appeal, the record states, that the plaintiff and defendant

appeared in court, and that the cause was continued from
term to term until May term 1819, when a jury was em-
pannelled to assess the damages, and an inquisition return-
ed by them assessing the damages sustained by the plaintiff
to $9530 05.

1. At executing the inquiry at bar, the plaintiff produc-
ed a witness, who proved that he became discount clerk for
the *Union Bank of Maryland* in March 1810, and that he
had been discount clerk ever since. He also offered to
prove by the same witness, that he, the plaintiff, had paid
six notes at said bank as they became due, viz. one note
dated the 31st of December 1810, for $1000; another dat-
ed the 28th of January 1811, for $2000; another dated the
31st of January 1811, for $1500; another dated the 4th of
February 1811, for $1500; another dated the 14th of Fe-
bruary 1811, for $1000; and another dated the 21st of Fe-
bruary 1811, for $1000, each drawn by the plaintiff, and
payable 60 days after date to *H. Wilmer*, or order. He
further offered to prove, that these notes were given to re-
lieve notes which were drawn by him and endorsed by *H
Wilmer*, to relieve other notes of the same amount. The
last mentioned notes were not produced, and no legal ac-
count given of them. The defendant objected to this last
evidence being given, and *the court* sustained the objecti-
on The plaintiff then, to charge the defendant, and to
ascertain his damages, offered to read in evidence the re-
cord of a judgment rendered in *Queen-Anne's* county court,
by the confession of *W. Harris*, surviving executor of *T.
Harris*, in an action brought originally against his testator,
and to which, as his executor, he appeared after his death,
by the present plaintiff, on the same writing obligatory up-
on which this action was brought, and such proceedings were
had therein, that in May 1816, a judgment was rendered

bond, because the condition contains an agreement that the de-
fendant shall indemnify and save harmless the plaintiff by his
lending his name to procure money for the defendant from some
of the banks. The damages are uncertain and must be ascertain-
ed by the verdict of a jury, if they cannot be adjusted by the par-
ties. The plaintiff in this cause has obtained a judgment by de-
fault for the penalty of the bond, and an order of the court be-
low for a writ of inquiry. The court are of opinion, that the
plaintiff is confined to his remedy prescribed by the statute, and
could not legally proceed at common law on his judgment, and
think the court below did right in quashing the execution
JUDGMENT AFFIRMED.

JUNE 1820

Wilmer
vs.
Harris.

by default, and an inquiry ordered at bar at the succeed-ing term, when *W. Harris,* the executor, confessed judg-ment for the penalty of the bond and costs; to be released on payment of $9000, with interest from the 7th of March 1811, until paid, and costs, with an agreement that pay-ments should be allowed as per statement filed. The plaintiff also offered in evidence a letter from *W. Harris,* which was admitted to be his hand writing, to his attorney, dated the 28th of October 1816, requesting him "to give a final judgment in the case of *E. Harris* against *W. Harris,* executor of *T. Harris,* agreeable to the credits rendered in an account sent"—and offered the account referred to in the letter, admitted to be in the hand writing of the plain-tiff, being the amount of credits taken from his book on ac-count of *H. Wilmer,* amounting to $3439 56, which he. proved were filed by him, and the counsel for *W. Harris,* at the time of the rendition of the judgment. It was ad-mitted that *W. Harris,* mentioned in the record so offered in evidence, is the son and surviving executor of *T. Har-ris,* the co-obligor in the bond upon which this action was instituted. The defendant then objected to the record of the judgment, the letter and account offered in evidence, as aforesaid, going to the jury. But the court, [*Earle,* Ch. J. and *Purnell,* A. J.] overruled the objection, and permitted the evidence to be given. The defendant ex-cepted.

2. The defendant then produced *W. Harris,* the surviv-ing executor of *T. Harris,* who being sworn with the con-sent of the parties, proved that at May term 1816, he at-tended *Queen-Anne's* county for the trial of the cause which was then pending against him as executor of his father, *T. Harris,* by *E. Harris;* that no proposition was made to him during that term by the plaintiff to confess a final judgment. That he also attended court at October term 1816, for the trial of the cause; that the plaintiff frequent-ly talked to him about settling it, and during that term proposed to him to give him a final judgment, agreeing to give the credits mentioned in the account before referred to. That the plaintiff told him he would receive from him one half of the balance, after deducting the account from the amount of his claim; that he would continue to prose-cute his claim for the whole sum against *P. Wilmer,* and upon the recovery of the whole sum, he would pay back

to him, the witness, the amount which the witness should
pay him; and he believed he should be able to recover the
whole sum of *P. Wilmer.*  At that time the plaintiff talked to the witness about the suit which he had against the witness, and also the suit which he had against *P. Wilmer;* and the plaintiff told the witness, that if he confessed judgment, he would bring the business sooner to a close, and that the witness would be able to settle his father's estate sooner, which the witness told the plaintiff he was anxious to do.  That his father died in October 1813; that *H. Wilmer* married the sister of the witness, and was a commission merchant and grocer in *Baltimore.*  That he heard his father several times, after the failure of *H. Wilmer,* which happened in 1811, say, that he supposed he should have his proportion of the money to pay, and alleged that *P. Wilmer* had been made safe.  His father also said, that he had heard from *J. B.* deceased, that he had seen goods in *Philadelphia* in the name of *H. Wilmer,* and that he had traced them to *Centreville* in the possession of *P. Wilmer.* All this was said by his father after the suits were brought against him and *P. Wilmer* by the plaintiff.  That he heard the plaintiff say, after the suits were brought, that he had reason to believe that *P. Wilmer* had funds of *H. Wilmer* in his hands.  The defendant then prayed the opinion of the court, and their direction to the jury, that if they should believe that it was intended by the confession of the judgment by *W. Harris,* as before mentioned, to charge *P. Wilmer,* (the defendant,) with the amount of the whole balance, after deducting the account referred to, and that *W. Harris* was influenced to confess the judgment from such an expectation, such confession ought not to charge the defendant in this cause with the damages claimed.  Which direction the court refused to give; but was of opinion, and so instructed the jury, that the admissions flowing from the letter of *W. Harris* to his counsel, and the judgment confessed by him to the plaintiff, ought to have no weight with the jury, if the jury should believe, from the testimony laid before them, that the letter was written, and the judgment confessed, with a view to furnish 'the plaintiff with evidence to be used to the prejudice of the defendant in the trial of this cause.  The defendant excepted.

3. The plaintiff then prayed the court to direct the jury, that if they believed, from the evidence, that at the time of

the settlement between the plaintiff and *W. Harris*, that the parties adjusted the account according to the balance which they believed to be due, and that the judgment was given for that balance, without an intention or knowledge on the part of either of them, that their proceedings would in any shape affect the decision of this cause, that the circumstance is no evidence of fraud, although it might have been agreed at the same time, that if a judgment should be rendered against the present defendant, the whole debt should be levied against him. The court gave the direction. The defendant excepted; and judgment being rendered on the inquisition of the jury for the sum assessed by them, and costs, the defendant appealed to this court.

The cause was argued before BUCHANAN, JOHNSON and DORSEY, J. by

*Hammond, Carmichael* and *Gale*, for the appellant, and by

*Bullitt, Chambers* and *Harrison*, for the appellee.

The opinion of the court was delivered by

DORSEY, J. This was an action of debt brought on a bond executed by the defendant, and *Thomas Harris* and *William Wilmer*. The bond, after reciting that the plaintiff had loaned to a certain *Henry Wilmer* certain promissory notes, to be discounted at bank, for the use of the said *Henry Wilmer*, proceeds as follows: "Now the condition of the above obligation is such, that if the obligors shall at all times save harmless, and keep indemnified, the said *Edward Harris*, his heirs, executors and administrators, from all and every claim which may be brought, exhibited, or prosecuted against him or them, for or on account of his having loaned his notes to the said *Wilmer*, and from all costs, damages and expenses, he or they may sustain, or be put to by reason thereof," &c. At October term 1813, a judgment by default was entered against the defendant for want of a plea, and the court at the same term made an order, that a proceeding, in nature of a writ of inquiry, be executed at the succeeding term, to assess the damages. The plaintiff issued a *ca. sa.* on this interlocutory judgment, returnable to the next succeeding May term, and the defendant was discharged by the court, on the ground that the execution had erroneously issued. The plaintiff thereupon prayed an appeal from such decision to the court of

appeals, and the court ordered a transcript of the proceed-

ings to be transmitted to the court of appeals, which was accordingly done. The record then proceeds to state the appearances of the plaintiff and defendant, and the continuance of the case by their consent at all the succeeding terms of the county court, until the third Monday of *May* 1818, on which day the appearances of the plaintiff and the defendant are both recorded, and the cause then continued by the court on the affidavit of the plaintiff, stating the absence of a material witness, until the ensuing *October* term. At which term the appearances of the plaintiff and defendant are recorded, and the cause further continued by the court, on a similar affidavit, to the succeeding *May* term, when the plaintiff and defendant appear, and a jury are empannelled to assess the damages, who return their inquisition, by which they find that the plaintiff has sustained damages to the amount of $9530 05, and a judgment was thereupon rendered for that sum, and costs.

Such is the state of the record, unconnected with the bills of exceptions, tendered by the defendant upon the trial before the jury of inquiry.

It cannot be controverted, that if it appears from the record that the jury could not legally assess the damages, the judgment must be reversed, because a judgment by default, for want of a plea on a bond with a collateral condition, is only an interlocutory judgment, and a final judgment can only be rendered when the damages sustained by the plaintiff by the nonperformance of the agreement, contained in the bond, are legally ascertained.

Before the statute of 8 & 9 *William III*, *chap.* 11, *s.* 8, the plaintiff in an action on a bond with a collateral condition would, upon an issue being found in his favour, or on judgment by *nil dicit* or on demurrer, have been entitled to a judgment for the penalty and costs, and might have taken out an execution for the whole, without any regard to the damage which he had actually sustained by breach of the covenants; but the statute declares, that the plaintiff may assign as many breaches as he shall think fit, and the jury shall assess the damages for such of the breaches as the plaintiff, upon the trial of the issues, shall prove to have been broken, and if judgment shall be given for the plaintiff upon demurrer, confession, or *nil dicit*, the plaintiff may suggest on the roll as many breaches as he shall think fit,

JUNE 1820.
Wilmer
vs.
Harris.

upon which a writ shall issue to the sheriff of the county where the action is brought, to summon a jury to inquire of the truth of those breaches, and to assess the damages. Where the declaration sets forth the condition of the bond, and proceeds to assign the breaches, and there is a judgment for the plaintiff on demurrer, nil dicit or confession, new breaches need not be suggested on the roll, because the declaration having assigned the breaches, it would be idle to suggest the same breaches again: so, if there is a judgment for the plaintiff on a demurrer to his replication, which sets forth breaches, a new suggestion of breaches on the roll would be unnecessary; and although the statute uses the words "may assign" and "may suggest," the courts have decided those words are compulsory on the plaintiff.

The following authorities are referred to in support of the above propositions:—2 Richardson's Practice in the Common Pleas, 285, (2d edition)—1 Saunders' Rep. 58, (Note 1.) 5 T. Rep. 636, 538. 2 Wilson, 377. And the statute extends, as well to bonds with conditions thereunder written for the performance of any thing contained therein, as to covenants and agreements contained in another indenture, deed or writing. Collins vs. Collins, 2 Burr. 824, 826; and Harris vs. Wilmer, in this court, at June term 1817, (ante 2, Note.)

It has been urged by the appellee's counsel, that the act of 1794, ch. 46, has dispensed with the necessity of making suggestions on the roll, in the manner prescribed by the statute 8 & 9 William. Before the passage of the act of assembly above referred to, writs of inquiry were generally executed before the sheriff, and the design of the legislature, in passing the act, was to transfer to the county courts this power, and that the parties should be entitled to call on the court for their opinion, on questions of law arising in the case, in the same manner as if a jury had been empannelled to try an issue in fact. This law being remedial and made for the advancement of justice by substituting a superior jurisdiction in the place of an inferior one, cannot, under any sound rule of interpretation, be construed to repeal any of the provisions of the British statute, relating to the suggestion of breaches. Let it be remembered, that the statute provides, that after breaches shall have been assigned or suggested, the judgment en-

tered shall remain as a security for any further breaches of covenant contained in the said deed, instrument or writing, and that the plaintiff may have a *scire facias* on the said judgment against the defendant, his heirs, executors and administrators, suggesting breaches of the covenants, and may summon them to shew cause why execution should not be awarded on the said judgment, upon which there shall be the like proceedings as were originally had in the action on the bond.

June 1820.

Wilmer
vs.
Harris.

Unless a suggestion is made on the roll, how can it be known that the breaches assigned in the *scire facias* are the same or different from those on which the judgment was rendered? The object of the statute, in requiring the suggestions, was to give certainty to the proceedings under it, but the effect ascribed to the act of 1794, *ch.* 46, by the counsel for the appellee, would destroy this legal certainty, when no possible reason can be suggested for such an intention on the part of the legislature.

The final judgment of the court below being erroneous on this ground, it becomes unnecessary to express an opinion on the other points raised by the appellant's counsel.

In relation to the bills of exceptions taken by the defendant's counsel, the court are of opinion, that the county court erred in each opinion expressed on those exceptions.

The court hold, that the admission of an executor or administrator of a co-obligor, cannot be used in evidence against the surviving obligor in a suit brought against him by the obligee, and of course, that a judgment confessed by such executor or administrator, (being nothing more than an admission,) is equally inadmissible. If the admissions of an obligor could be used as evidence against a co-obligor, (and whether they could, or not, the court do not mean to decide,) yet it does not follow that the confessions of an executor or administrator are equally admissible. The privity between the executor or administrator, and co-obligor, is not the same as that between the co-obligors, and it cannot be supposed that the executor or administrator has the same information on the subject as his testator or intestate had. No case has been cited in support of the admissibility of such testimony, and various considerations of policy and justice are opposed to it. The court below therefore erred in permitting the judgment confessed by

JUNE 1820. *William Harris*, the account of the plaintiff, and the letter of *William Harris*, to go before the jury.

It necessarily follows from this view of the case, that the opinion of the county court, as expressed in the *second* bill of exceptions, is erroneous, because in their direction to the jury they declare, that the admissions flowing from the letter of *William Harris* to his counsel, and the judgment confessed by him to *Edward Harris*, ought to have no weight with them, if they believe from the testimony laid before them that the letter was written, and the judgment confessed, with a view to furnish *Edward Harris* with evidence to be used to the prejudice of the defendant in the trial of this cause; thus giving to the plaintiff the full benefit of those documents as testimony, except in the particular case stated by the court, when in point of law such judgment and letter were not legal and admissible in any way to charge the defendant.

And this view is equally fatal to the opinion delivered in the *third* bill of exceptions; because the court therein recognize the settlement between the plaintiff and *William Harris*, and the judgment against *William Harris*, as evidence in the cause, by declaring its legal effect in a specified case, when in point of law they ought to have rejected the prayer, as not being founded on testimony which was legal and admissible.

The court therefore reverse the judgment of the county court, this court dissenting from the opinions expressed in all the bills of exceptions.

JUDGMENT REVERSED, AND PROCEDENDO AWARDED.