(Decided June 29th, 1860.)

# JOSEPH D. GREEN *vs.* WILLIAM HAMILTON.

In an action of *trover* judgment by default for want of a plea was entered, and subsequently an inquisition was taken and damages assessed to the plaintiff, and a *final judgment* rendered thereon, and execution issued which was outstanding. *After the lapse of a term,* the defendant

Green vs. Hamilton.

moved to strike out the final judgment, for fraud, deceit, surprise and irregularity, and the court ordered the judgment and inquisition to *be struck out*, but allowed the *judgment by default to stand*, with leave to the plaintiff to *proceed thereon*, and have *another inquisition*, and from this order the plaintiff appealed. HELD that the appeal lies.

A judgment by default, regularly entered, is as binding as any other, as far as respects the power and jurisdiction of the court in declaring that the plaintiff is entitled to recover, though the amount of the recovery, in some cases, remains to be ascertained by a jury.

A finding upon an inquisition has the same dignity and efficacy as a verdict on issues; the defendant may participate in the inquiry at bar, and if he absents himself, he has no better standing in court afterwards than a defendant who has defended the cause.

The fact that the jury, on an inquisition, in an action of trover, assessed more damages than the evidence would warrant, is nothing but a reason for a new trial; it is no ground for striking out the judgment for fraud, deceit, surprise or irregularity, under the Act of 1787, ch. 9, sec. 6.

Nor is the admission of inadmissible evidence, on an inquisition, ground for striking out the judgment under this Act; if a party allows such evidence to go to the jury, he is bound by the verdict; he must object when the testimony is offered, and the fact of his absence does not vary the principle.

APPEAL from the Superior Court of Baltimore City.

*Trover*, brought on the 10th of April 1856, by the appellant, against the appellee, to recover damages for an alleged wrongful conversion, by the defendant, of certain goods, consisting of sundry pieces of silks, satins, &c., belonging to the plaintiff. A copy of the declaration, in which the damages were laid at $2000, and a notice of a rule to plead thereto in fifteen days after appearance, were duly served upon the defendant with the writ. The writ was returned at the May term 1856, and the personal appearance of the defendant entered by the court, pursuant to the Act of 1852, ch. 76, sec. 2, and a rule to plead was then entered according to the notice previously given. The case was afterwards continued by successive continuances to January term 1857, when a judgment by default was entered against the defendant for want of a plea, with leave to the plaintiff to have an inquiry of his damages.

Two commissions were then issued to take testimony in Philadelphia, the first, on the 28th of September 1857, to William Ogle, Esq., and the second, on the 23rd of October 1857, to J. Henry Bryan, Esq., of that city. The facts proved under these commissions are substantially these: The plaintiff was a dry-goods merchant in Philadelphia, and the defendant an auctioneer doing business on Pratt street, in Baltimore. On the night of the 8th of March 1855, the plaintiff's store was broken into and robbed, by one Dougherty, of a large quantity of valuable silks and satins, valued, as stated by one of the witnesses at about $1000. Dougherty conveyed the stolen goods to Baltimore and brought them to the defendant's store in carpet bags, and the defendant sold them at auction and accounted for the proceeds to Dougherty. A list of a portion of the goods stolen, made out by the plaintiff, with the current prices annexed, amounting to $533.04, and a list of the defendant's account of sales, showing sales to the amount of $204.66, were filed with the first commission.

On the 14th of December 1857, an inquisition was taken at bar, and the plaintiff's damages assessed at $1000, and final judgment was thereupon rendered, and at the succeeding January term, a writ of *fieri facias* was issued on this judgment, returnable to the May term 1858, which writ is still outstanding. Afterwards, in May term 1858, the defendant moved the court to strike out the judgment of the 14th of December 1857, "for fraud, deceit, surprise and irregularity in obtaining the same," and as the ground for such motion, alleged in his affidavit:

1st. That the judgment has been entered for $1000, in face of the fact that the plaintiff's own evidence appearing on the record establishes the amount which he can claim of the defendant to be not more than $204.66.

2nd. That the only evidence submitted by the plaintiff to the jury, who found the inquisition, was that contained in the commissions issued to Philadelphia, and that no notice of the asking, or granting, of either of these commissions, was given to the defendant, and no copy or notice of the interrog-

atories annexed thereto served on him, and that he was not served with any notice to appoint a commissioner, or with the name of any commissioner nominated by the plaintiff, and that the plaintiff, so far as the proceedings disclose, did not nominate either Bryan or Ogle, to whom these commissions were issued, to the Superior court, or the judge, or the clerk thereof, as a commissioner, and that there was no power in the court, or the judge, or the clerk, to issue either of them, and that the court had no power to allow the evidence taken under either to be read to the jury, which was in point of fact read to them and was the only evidence on which they found the inquisition.

The defendant further alleges that certain merchandize was brought to his auction store, in March 1855, by one Dougherty, a stranger to him, and was represented by Dougherty to be his property; that he sold the same at public auction, at Dougherty's request, and paid him the whole proceeds, and at the time defendant received and sold these goods, he believed Dougherty to be the owner, and had no suspicion, or grounds of suspicion, that they were the property of any one else; and that after the sale, a person on behalf of the plaintiff came to defendant's store, and inquired if he had had or sold any such goods, and defendant furnished him with all the information in his possession on the subject, and showed him the account of sales in his books, and that the plaintiff was acquainted with the facts when he instituted this suit and recovered this judgment; that defendant never received of the goods, alleged by the plaintiff to have been his, to a greater extent than what had been sold as aforesaid, for $204.66; and that the plaintiff also knew that the proceeds of such sales had been paid over by the defendant before the institution of this suit, and in ignorance of the alleged property therein of the plaintiff; and the defendant can prove all the facts above mentioned, by competent testimony, if he be allowed an opportunity to do so.

The plaintiff for cause why the judgment should not be stricken out, and for answer to the allegations of the defendant in the premises, filed an answer, verified by affidavit, in which he alleges:

Green *vs.* Hamilton.

1st. That the defendant has no standing in court to make this motion, because of his laches and delay.

2nd. That the judgment, upon the finding of a jury, cannot be disturbed after the term at which it was given, or, at all events, a power, so doubtful, ought not to be exercised in circumstances like the present, where the defendant has been so remiss and negligent.

3rd. That it is too late now to inquire into the evidence produced to the jury on the inquisition, and whatever objections might have obtained to any evidence then offered, should have been taken at or before the trial, or, at least, within the period thereafter during which the defendant could have moved for a new trial.

4th. Not waiving the preceding grounds, the plaintiff further says, the facts averred in the defendant's affidavit, and upon which his motion is based, are not only immaterial and irrelevant, but are not set forth according to the truth of the case. It is not true, as alleged, that the plaintiff's own evidence, appearing on the record, establishes the amount of his claim to be not more than $204.66. The plain facts are, that the plaintiff's store, in Philadelphia, was robbed at night of silks and satins, and other valuable dry goods, to a large amount, by one Dougherty. These goods were traced to the defendant's store, whither they were brought, as the plaintiff has been informed, with the labels and wrappers torn off, packed in part or wholly in carpet bags, and otherwise in such a condition that any man of ordinary intelligence could not well help suspecting something was wrong about them. The defendant received them, sold them, and delivered them to purchasers, and therefore, upon the plainest principles of law, was guilty of a conversion, and liable for the real value to the true owner. The value of the goods so stolen and converted, was far more than the amount for which the defendant says he sold them, and at a moderate estimate at least $1000, the sum that an intelligent jury, upon the evidence before them, pronounced the same to be worth. Touching the commissions, he submits that nothing connected with them can possibly be a ground for striking out the judgment,

41    v.16

because they were issued long after the judgment by default, and that judgment cannot be affected by matter subsequent. The inquisition cannot be affected, because the most that can be said against the issuing of the commissions is, that the evidence taken under them might have been objected to. But nothing is clearer than that any objection to evidence ought to be made at the time it is offered. The defendant, by construction of law, was in court when the inquisition was taken, and if any ground of objection, to any evidence that may then have been offered, existed, it was his place to have urged it, otherwise no inquisition could stand, and there never would be an end of litigation. The plaintiff further insisted that the second commission, the evidence taken under which alone was read to the jury, was properly and legally issued and executed.

The court (LEE, J.) sustained the motion, on the ground that the commissions, under which the testimony was taken, were not issued in conformity with the Acts of Assembly and rule of court, and ordered the inquisition and judgment thereon to be struck out and set aside, but that the judgment by default stand, and that the plaintiff shall at any time be entitled, on motion, to have an inquiry of the damages and costs. From this order the plaintiff appealed.

The cause was argued before LE GRAND, C. J., ECCLESTON, TUCK and BARTOL, J.

*R. J. Gittings* and *A. W. Machen,* for the appellant, argued:

1st. That whatever control the court might have had over the inquisition and consequent judgment *within the term,* it had no power, either at common law or under the Act of 1787, ch. 9, to set them aside, at a subsequent term, for any such cause as is attempted to be established here, and the court, therefore, in passing the order appealed from, acted without jurisdiction, for—

1st. The issuing of a commission to take testimony in a cause, is a collateral proceeding, which has nothing to do

with the judgment. Any want of regularity touching the commission, may be ground for objecting, at the trial, to the use of the evidence obtained under it, if the same shall be offered, but, as the commission is no necessary step in the cause, and as a judgment is equally capable, in law, of being given, whether a commission issue or not, such want of regularity cannot, in any sound use of the words, be said to be an *irregularity in obtaining the judgment,* as provided in the Act of 1787, ch. 9, sec. 6. Error is not irregularity. An irregular judgment is a judgment entered contrary to the course and practice of the court, as without service of process, or by default before the proper period of the term, or in *scire facias,* upon the return of but one *nihil,* and the like. 2 *Dev. & Batt.,* 156, *Skinner vs. Moore.* The appellee might just as reasonably contend that the irregularity in the *execution* of the *first* commission, the evidence taken under which was never used at all, would make the judgment irregular.

2nd. The commission was sufficiently well issued, or if it was not, any defect therein has been cured under the 29th rule of court, by the defendant's omission to raise the objection before the jury were sworn.

3rd. The introduction of incompetent evidence not objected to at the time by the party, and permitted to go in by the court, the inquisition being taken at bar in its presence, is not even ground for a new trial, much less is it irregularity and capable in law of vitiating the entire proceedings. 7 *G. & J.,* 95, *Farmers Bank vs. Duvall. Graham on New Trials,* 199. At all events, the objection ought to have been made within the time allowed for a motion for a new trial, or in arrest, or, at farthest, *within the term.* 6 *How.,* 31, *Bank of U. S. vs. Moss.* 12 *Pet.,* 492, *Sibbald vs. United States.* 13 *Md. Rep.,* 566, *Katz vs. Moore.* 14 *Md. Rep.,* 564, *Sherwood vs. Mohler.*

2nd. That granting the power of the court in the premises, it was not duly exercised, nor was there just cause for its exercise. In support of this position, we rely upon the points and authorities above mentioned, and in addition urge:

1st. That the gross laches and delay of the defendant dis-

entitled him to be received with any favor. 1 *G. & J.*, 396, *Burch vs. Scott*. 3 *Johns. Ch. Rep.*, 356, *Duncan vs. Lynn*. 7 *Missouri*, 6, *Weimer vs. Morris*. 1 *Tidd.*, 513, 514, 533, 567.

2nd. That justice was done by the judgment, and therefore it ought not to have been disturbed. It is clear that the appellee (even supposing him to have acted in the most perfect good faith,) was guilty in law of a conversion, and liable in trover to the owner of the goods for their value. The case of *Hoffman vs. Carow*, 20 *Wend.*, 21, affirmed by the Court of Errors in 22 *Wend.*, 285, decides this very point. See, also, 4 *Bing.*, 66, *Adamson vs. Jarvis;* 80 *Eng. C. L. Rep.*, 148, *Buckland vs. Johnson;* 1 *Wilson*, 328, *Perkins vs. Smith;* 2 *Strange*, 813, *Parker vs. Godin;* 1 *Leigh*, 86, *Newsum vs. Newsum*. Indeed, it has not been attempted to unsettle the judgment by default, which establishes the *right* of the plaintiff, and only leaves open the question of damages. There can be no reasonable doubt that all the stolen goods came to the appellee, and the appellant swears, and so is the other proof, that the sum awarded by the jury is a moderate estimate of their value.

3rd. The Act of 1787, ch. 9, requires that in all cases where the power given by it is exercised, the court shall direct *continuances* to be entered from the term when the judgment was obtained, until the term when it is set aside. Either, therefore, the court had no power to set aside the inquisition and judgment, as was attempted, or the entering up of the continuances was an indispensable condition of its exercise. But this condition was not complied with. 2 *H. & G.*, 382, *State vs. Cox*.

3rd. An appeal lies. If our first point is maintained, that the judge of the court below acted without jurisdiction, there can be no question that his order is ground for appeal. 9 *Gill*, 93, *Webster vs. Cockey*. 5 *Md. Rep.*, 337, *State vs. Mace*. But if he had jurisdiction, yet exercised it without good grounds, the appeal is still well taken. An order or judgment *vacating a final judgment,* and given *after the term* at which the judgment so affected was rend-

ered, is always a subject for appeal. 2 *H. & G.* 374, *Munnikuyson vs. Dorsett.* 1 *G. & J.*, 393, 426, *Burch vs. Scott.* 11 *G. & J.*, 147, *Oliver vs. Palmer.* 3 *Ohio N. S.*, 445, *Huntington vs. Finch.* An appeal, under such circumstances, has been sustained in other cases, in several of which the circumstances were not so strong as the present. 12 *G. & J.*, 456, *State, use of Hickley, vs. Stewart.* 3 *G. & J.*, 349, *Klinefelter vs. Carey.* 1 *G. & J.*, 393, 426, *Burch vs. Scott.* An appeal lies from an order quashing an execution, which the order in the present case in effect does. 6 *G. & J.*, 79, *Waters vs. Duvall.* 2 *H. & G.*, 87, *Hollingsworth vs. Floyd.* An appeal also lies, on the ground that continuances are not ordered to be entered. 2 *H. & G.*, 379, *State vs. Cox.*

*J. Mason Campbell* and *P. McLaughlin,* for the appellee, argued:

1st. That the order appealed from, is not an order from which an appeal will lie. It does not conclude the case. The plaintiff may still go on and get his final judgment. 2 *H. & G.*, 374, *Munnikuyson vs. Dorsett. Ibid.*, 379, *State vs. Cox.* 7 *G. & J.*, 113, *Boteler vs. State.*

2nd. If the motion to dismiss is overruled, the appellee then insists upon the grounds disclosed in his affidavit in the court below, and the rules of that court, as sufficiently warranting the order appealed from. He was entitled to notice of the issual of the commissions, and none was given him. They were, therefore, issued without authority of law, and so the evidence upon which the jury acted was not only incompetent, but a surprise and fraud on the appellee, which fatally vitiates the judgment. It would be a very great reproach to the administration of justice if such a judgment as this is permitted to stand—a judgment for $1000, where the plaintiff admits, by the evidence adduced by himself, that less than half that sum is due him. His own list of articles stolen, which, it now appears, was withheld from the jury, (the evidence under the second commission only having been offered,) shows that the goods were worth but $533.04. The

account of sales furnished by the defendant and returned under the first commission, as evidence on the part of the plaintiff, shows that the goods sold for but $204.66. This renders the judgment fraudulent, for if there be fraud in the judgment itself, or in the mode of obtaining it, the judgment is equally vitiated.

Tuck, J., delivered the opinion of this court.

In this case a judgment, for want of a plea, was entered against the present appellee—the defendant below—in January 1857. On the 14th of December following, an inquisition was taken and damages assessed to the plaintiff, on which a final judgment was rendered, and a writ of *fi. fa.* issued in January 1858, returnable to May court of that year, which writ is outstanding.

During May term 1858, the defendant moved the court to strike out the final judgment, for "fraud, deceit, surprise and irregularity," which motion the plaintiff answered, and the court struck out the judgment and inquisition, allowing the judgment by default to stand, with leave to the plaintiff to proceed thereon, and have another inquisition.

The first question for consideration relates to the right of appeal, the appellee insisting that the order appealed from does not conclude the case, as the plaintiff may still go on and get his final judgment upon another inquiry at bar. In this view of the question, we do not concur. An appeal will not lie from a judgment on demurrer against the defendant in an action of debt on a bond with collateral condition, until an inquisition is taken and final judgment entered; the appeal must be taken from the final judgment. *Wheeler vs. The State*, 7 *Gill*, 33. The reason is that the first judgment is merely interlocutory. The same rule applies where a judgment by default is entered, and, from the nature of the case, an inquisition is necessary to ascertain the extent of the plaintiff's right to recover. *Wilmer vs. Harris*, 5 *H. & J.*, 1. But here the plaintiff appeals from an order striking out the final judgment, after the term has elapsed. We think this cannot be distinguished from the case of *Munnikuyson vs.*

*Dorsett*, 2 *H. & G.*, 374. There a *fiat* on *sci. fa.* was entered by default. After several years the defendant moved the court to strike out the judgment, and filed affidavits presenting a strong case for the interference of the court, showing, among other things, that she had removed from the county, and had no knowledge of the writ of *sci. fa.* until long after the *fiat*—an attorney having appeared for her without authority. The *fiat* was stricken out, but on appeal that ruling was reversed, not merely because, as stated in argument here, the court had omitted to order regular continuances to be entered, but expressly, also, on the "broad ground that, under the circumstances of the case, the county court were not authorized to strike out the judgment on the *sci. fa.*" It was suggested that the appeal should be dismissed, because the court had given no final judgment; bu the decision was made on the merits and the order reversed It is true, that in the next case—2 *H. & G.*, 379—growing out of the same original judgment—the court, in reversing the order striking out the judgment, confined their opinion to the failure of the county court to enter the continuances—but, as the same judges sat in both cases, we are not to suppose that it was meant to impair the force of the first decision, based on the merits. The case of *Keirle & Walker vs. Shriver*, 11 *G. & J.*, 405, is not like the present. That suit appears to have been so irregularly conducted, that it cannot be taken as settling principles to govern in others not precisely of the same character. The plaintiffs, though the proceedings were clearly erroneous, had no cause of complaint, because most of the irregularities operated in their favor. On a motion in arrest of judgment the court, instead of discharging the defendant without day, merely set aside the verdict by which a new trial was allowed the plaintiffs, and it was held that there could be no appeal until that trial had taken place. There was no final judgment in the case at all. And so in *Boteler vs. The State*, 7 *G. & J.*, 113, the defendant appealed from an order granting a new trial, where the judgment on issues of law was for him, but the verdict on issues of fact against him, (see page 111.)

But, as in the last quoted case, there had been no final judgment. In both these instances the proceedings, that gave rise to the appeal, were had during the term. In the cases of *Baldwin vs. Wright*, 3 *Gill*, 241, an appeal was entertained, and the judgment reversed, where the court below had quashed a *ca. sa.* See No. 8, page 244. But in No. 9, page 245, the appeal from a judgment overruling a motion to quash an attachment was dismissed, because it was interlocutory and not final. It had previously been decided that a plaintiff might appeal from a judgment quashing an execution. *Wilmer vs. Harris*, 5 *H. & J.*, 2, (*note.*) *Hollingsworth vs. Floyd*, 2 *H. & G.*, 87. And so from a judgment setting aside an award. *State vs. Stewart & Gross,* 12 *G. & J.*, 457. And even in ejectment, where judgment against the casual ejector may be struck out after the term, if of recent date, an appeal lies at the instance of the plaintiff from an order striking out the judgment. *Klinefelter vs. Carey*, 3 *G. & J.*, 349. Now it may be said, that striking out these judgments, or quashing an execution, did not conclude the cases, but left the plaintiffs to proceed to another judgment, or to sue out another execution, as the cases required, with as much reason, as it is here contended, the plaintiff may proceed on his judgment by default, and have another inquisition. Indeed the argument is less cogent in support of the right of appeal in the case of an execution quashed than here, because there the judgment ascertains the debt, and the lien on realty is not disturbed, whereas the effect of setting aside the inquisition is not only to deprive the plaintiff of all benefit, from the outstanding *fi. fa.*, but also to remit him to the uncertainties of another trial. When the authorities inform us that, "an appeal cannot be prosecuted until a decision has been had in the court below, which is so far final as to settle and conclude the rights involved in the action, or denying to the party the means of further prosecuting or defending the suit;" and "that when the proceedings below shall be terminated, an appeal will then lie, and all the errors of the court below, in the progress of the cause, will be proper subjects for com-

plaint of the party, and for the correction of the Court of Appeals," (7 *G. & J.*, 109; *Welch vs. Davis,* 7 *Gill,* 364,) they are to be understood as applicable to cases where the judgment appealed from is entered, while the cause is *in fieri,* and not as embracing those where the plaintiff has obtained a final judgment, and the term has passed. In such cases it is an injury—and in many a most serious one to him—to be deprived of his judgment and the chances of early reaping its fruits, although he might eventually succeed in the cause.

The same principle applies to cases in equity. An appeal lies from an order refusing to vacate a decree and to let in the merits as a defence, on a proper case made, and also where the enrolment is opened, and the decree vacated. In each case the rights of the party are injuriously affected. *Oliver vs. Palmer & Hamilton,* 11 *G. & J.*, 137. For the reasons stated, the motion to dismiss the appeal is overruled.

Considering the case upon the reasons assigned, we think the court erred in striking out the judgment. A party who is himself in default, by disregarding the process of the court, whether contemptuously or not, ought to present a much better case for striking out a judgment than this record discloses. If the appellee had appeared to the suit according to the exigency of the writ, and defended the cause, he might have escaped the predicament in which he now finds himself. A judgment by default, if regularly entered, (and to this one there is no objection,) is as binding as any other, as far as respects the power and jurisdiction of the court, in declaring that the plaintiff is entitled to recover; though the amount of the recovery, in some cases, remains to be ascertained by a jury. When determined, we are not aware of any rule or principle of law, which attributes to such a finding less dignity or efficacy than to a verdict found upon issues. They are both based upon evidence, and if any be improperly admitted, it is the fault of the defendant himself, who is entitled to participate in the inquiry at bar; and if he absents himself, he has no better standing in court afterwards than a defendant who has defended the cause. Indeed ours would

42     v.16

Green vs. Hamilton.

be a singular system of jurisprudence if it were otherwise. The Act of 1794, ch. 46, places the inquiry on the same footing with other jury trials: "The evidence is to be given in open court in the same manner, and under the same regulations." The parties may pray the opinion of the court and take bills of exception, and may appeal, as in other cases; and the inquisition may be set aside for the same grounds as would avail on a motion for a new trial. *Ev. Prac.*, 335, 338. *Belt vs. Worthington*, 3 *Gill & Johns.*, 247.

The grounds of the present motion are fraud, deceit, surprise and irregularity, which are supposed by counsel to be covered by the allegations that, "the judgment was rendered for one thousand dollars, in the face of the fact that the plaintiff's own evidence, appearing in the record, establishes the amount to be not more than $204.66," and that the only evidence before the jury was that contained in the return of a commission that had not issued according to the Act of Assembly, accompanied by a statement of the circumstances of, and manner in which the defendant became possessed of the plaintiff's goods; all which grounds are fully set forth in the defendant's motion to strike out the judgment. As to the first ground, we think that it is nothing more than a reason for a new trial, because the jury found against the evidence in the cause, and does not substantiate the charge of fraud, deceit, surprise or irregularity. We cannot go into the circumstances of the case, to perform the office of jurors; and especially in an action of *trover*, where the question was the value of the property, and not what it produced at public auction. The defendant might have moved for a new trial, and the judge who tried the cause, in the exercise of his legal discretion might have afforded relief, but we cannot. In our judgment the Act of 1787, ch. 9, sec. 6, does not apply to any such reason for opening a case. It is not a sufficient answer to say that he was not present. At any rate, it was his own laches that he was not, and the plaintiff ought not to suffer by it.

The same may be said, substantially, of the irregularity as to the commissions. It is merely the case of alleged inad-

missible testimony submitted to the jury. The law is well settled, that if a party allow such evidence to go to the jury he is bound by the verdict. He must object when the evidence is offered. As before observed, his absence does not vary the principle. If he had been present, or if this had been a trial *inter partes,* would he now be heard to object to the evidence on any such ground? Certainly not. If such were the law, every judgment might be opened where, on the trial, incompetent witnesses had been examined, or inadmissible evidence tendered and read to the jury. Besides, the very rule of court relied upon by the appellee requires, that, "exceptions to the execution and return of a commission shall be made before the jury is sworn, otherwise they shall be considered as waived."

We do not think that this ruling of the court below can be maintained consistently with well settled principles of law. We are satisfied that a party defendant, who had been present at the trial, could not be relieved on any of the grounds suggested, and to allow a defendant who was absent, without any fault on the part of his adversary, to come in after the term and have redress, would be reversing the maxim, *"vigilantibus non dormientibus leges subveniunt."*

The judgment must be reversed and a *procedendo* ordered, to allow the appellant the benefit of his *fi. fa.*

*Judgment reversed and procedendo awarded.*

(Decided June 29th, 1860.)