W. B. Shelby Crichlow *et al* v. Maryland Casualty Co.

156 So. 440.

Division A.

Opinion Filed November 28, 1933.

Opinions on Rehearing Filed June 27, and December 11, 1934

*W. B. Shelby Crichlow,* for Appellant;

*P. L. Caskins* and *J. Henry Taylor,* for Appellee.

ELLIS, J.—It is necessary to make a chronological statement of the events transpiring in this cause to the end that a reasonably clear conception of the controversy involved

in the appeal may be obtained. The arrangement of the transcript of the record renders the work of presenting the real. questions involved somewhat difficult. The solicitors themselves do not agree upon the statement of the case in their briefs, so the solicitor for the appellee deems it necessary because of the incompleteness, so he states, of appellants' statement to enlarge "somewhat on the detail of the facts disclosed by the record."

On August 29, 1930, the Maryland Casualty Company, a Maryland Corporation, exhibited its bill in the chancery court for Manatee County against W. B. Shelby Crichlow and his wife Lillian C. Crichlow. The purpose of the bill was the enforcement of a lien of a mortgage on a lot in Pelot's Addition to Bradenton, which the Crichlows in February, 1927, had executed in favor of the Security Bond and Mortgage Company, a Florida corporation. The mortgage was executed to secure a promissory note of the Crichlows,' dated the same date as the mortgage, in the sum of twenty thousand dollars payable to the order of the Security Bond and Mortgage Company three years after date, with interest payable semi-annually at the rate of eight per cent. per annum. The note included a promise to pay reasonable attorneys' fees, should it become necessary to collect it through an attorney.

. The mortgage contained usual covenants to pay the note and the debt itself; to pay taxes, lawyers' fees incurred reasonably because of failure to pay the debt or comply with the conditions and covenants of the note, which was under seal; to keep the buildings on the land insured and to permit no waste, impairment or deterioration of the property. The mortgage was duly recorded. The bill alleged that the complainant, Maryland Casualty Company, is the lawful holder and owner of the mortgage and the note, the payment of

which the mortgage secured. It does not appear from the words of the bill that either the note or mortgage or copies thereof were attached to the bill, although a note and a mortgage similar to that described in the bill or copies of such instruments appear in the transcript immediately following the bill.

The bill alleges that the Maryland Casualty Company acquired the note and mortgage by written assignment from the Maryland Trust Company, a Maryland Corporation, and Robert Griswold as Trustees under a written assignment and deed of trust executed by them and Security Bond and Mortgage Company; that the assignment to the complainant was made in May, 1930, and that the trust deed was executed in April, 1926; that the Crichlows are the owners of the mortgaged premises; that they have failed to pay the principal sum of twenty thousand dollars and failed to pay any interest on the debt since August 18, 1928, except the sum of four hundred dollars paid which was credited on the interest installment of eight hundred dollars which accrued February 15, 1929. The complainant under an acceleration clause in the mortgage declared the debt to be due and payable. The complainant claimed that there was due the principal sum of twenty thousand dollars, interest from August 15, 1928, except the payment of four hundred dollars on the interest installment of eight hundred dollars due February 15, 1929, eleven dollars advanced for abstract of title, eleven hundred and seventy dollars which complainant had obligated to pay its solicitor, and costs. The prayer was for an accounting and foreclosure and sale. No written assignment of the note and mortgage to complainant was attached to the bill, nor was the alleged trust deed or copy of it alleged to have been made in April, 1926, attached.

. The transaction in which the complainant acquired the note and mortgage is difficult to understand from the involved sentences in which the information is sought to be conveyed by the bill. The point, however, may be immaterial. It appears that some sort of an arrangement existed between the Security Bond and Mortgage Company, the Maryland Trust Company and Griswold evidenced by a deed of trust dated April 6, 1926, nearly a year before the execution of the note whereby Maryland Trust Company and Griswold became Trustees; that those Trustees' acquired the note and mortgage by written assignment from the Security Bond and Mortgage Company executed on February 15, 1927, the same date on which the note and mortgage were executed.

An application was made for a receiver on May 21, 1932, but the court denied the petition but by stipulation between the parties it was agreed that the defendant W. B. S. Crichlow should execute a bond in the penal sum of seven hundred and fifty dollars conditioned that the rents which he was collecting from the property up to six hundred and fifty dollars per annum should be accounted for and paid into court and applied on the payment of current taxes. The order required that to be done and Crichlow executed the bond. The order was made on May 30, 1932, and the bond was executed June 1, 1932, and filed September 12, 1932. On May 30, 1932, the complainant asked leave to amend its bill of complaint and the court granted the motion on the same date and allowed defendants until June 15th following to answer. No amendment to the bill appears to have been made pursuant to that order.

On June 15, 1932, the defendants interposed their answer to the "amended bill."

A demurrer in the meantime had been interposed to the bill on November 3, 1930. It was inserted in the transcript

upon direction of the appellee. The demurrer was overruled and in March, 1931, the Crichlows appealed from that order. The order was affirmed by this Court. Crichlow v. Maryland Casualty Co. 103 Fla. 267, 137 South. Rep. 276.

The order overruling the demurrer was entered February 13, 1931, and the defendants were allowed until March 10, 1931, to answer. On the day they were required to answer they took the appeal. On the 6th day of April, 1931, the complainant caused a decree *pro confesso* to be entered by the clerk against the defendants for failure to answer the bill of complaint. On the 10th day of June, 1931, an affidavit by complainant's counsel was filed showing that the Honorable W. T. Harrison, Judge of the Circuit Court for Manatee County was not in Manatee County and application was made to Honorable Paul C. Albritton, Judge of the Circuit Court for the Twenty-Seventh Circuit, for an order confirming the entry of the decree *pro confesso* and the appointment of a special master to take testimony. The order was made June 10, 1931, after due notice to the parties. On the same day the Master filed his report showing the amount due by the defendants to be twenty-four thousand one hundred and eleven dollars and eleven cents. One thousand dollars as solicitors' fees and twenty-four dollars and forty-five cents costs and expenses, making a total of twenty-five thousand one hundred and thirty-five dollars and fifty-six cents and on the same day Judge Albritton rendered a final decree after notice to all parties "entitled to the same." The report of the Master was confirmed and the relief as prayed for the bill was granted.

On the 3rd day of August, 1931, the defendant, W. B. Shelby Crichlow, applied to the Chancellor for an order directing that the appeal which was taken on March 10, 1931, from the order overruling a demurrer to the bill operate as a supersedeas and for an order staying "all further

proceedings in the Circuit Court pending said appeal." The Chancellor granted the order but failed to fix the amount of the bond to be given by the Crichlows. A bond was executed on the same day in the sum of one thousand dollars and approved by the Chancellor, W. T. Harrison.

On December 31, 1931, the mandate from the Supreme Court was filed in the lower court. While the appeal from the order overruling the demurrer was taken within the period allowed for such appeals, see Sec. 4960 C. G. L. 1927, State v. City of Coral Gables, 101 Fla. 237, 133 South. Rep. 892, the order of Judge Harrison made four months and twenty-three days afterwards was without authority of law and void in so far as it purported to affect the power of the lower court to proceed with the cause to a final decree granting the relief prayed for after the appeal without supersedeas from the order overruling the demurrer. The right to an appeal is conferred by the Constitution "but the right to a supersedeas in connection with appellate procedure, is conferred and regulated by statute; and whether a supersedeas is appropriate and what is its effect, if obtained, is to be determined upon a consideration of the particular facts of a case and of the controlling provisions and principles of law applicable in the premises." Willey v. Hoggson, 89 Fla. 846, 105 South. Rep. 126.

In Banning v. Brown, 73 Fla. 54, 74 South. Rep. 23, the language of the court both in the text of the opinion and in the third headnote indicates that the order of supersedeas if granted by the trial court must be within thirty days of the entry of the decree or order appealed from. The jurisdiction of the appellate court is exclusive only as to the subject covered by the appeal. Were there is no supersedeas taken in an appeal from an interlocutory order the lower court may proceed further after the appeal but such proceedings are subject to the orders or decrees of the appellate

court in the case on the appeal. The limitation upon this rule extends only to the point of depriving the lower court of the power to finally dispose of the cause by dismissal or otherwise so as to in form or effect interfere with the power and authority of the appellate court under the Constitution to make its jurisdiction and orders effective in the cause to which the organic jurisdiction has attached by due course of appellate procedure. Moody v. Volusia County, 90 Fla. 864, 107 South. Rep. 185; Crichlow v. Equitable Life Assurance Society, this day decided.

Now the orders of the lower court, the entry of the decree *pro confesso,* the order of reference and final decree all made after the appeal from the order overruling the demurrer and before the order of supersedeas was entered, assuming the latter to be valid, were all within the power of the lower court and they did not tend to impair or to interfere with the appellate jurisdiction and power of the Supreme Court or to defeat the efficiency of the appellate proceedings already taken. Such proceedings, however, were subject to the order or decree made on the appeal taken from the interlocutory order.

The above stated doctrine was announced in First Nat. Bank v. Dutcher, 128 Iowa 413, 104 N. W. Rep. 497, 1 L. R. A. (N. S.) 142, text 149, and cited with approval by this Court in Willey v. Hoggson, *supra.*

The reason for the rule is so clearly and forcefully stated by Mr. Justice WEAVER of the Supreme Court of Iowa in the above cited case that it may be of value to insert it here:

"To hold otherwise, and say that, by appealing from an interlocutory ruling, a party may deprive the trial court of jurisdiction to take any further step in the case until, in the slow course of appellate procedure, it is remanded, only to begin another round through the appellate tribunal from

the next adverse ruling, would be to deprive courts of the power to administer substantial justice, and prolong litigation until Jarndyce v. Jarndyce would cease to be any exaggeration of the law's delays. Of course, the party who proceeds with a case after his adversary has taken an interlocutory appeal assumes the risk of the effect which an adverse decision by the appellate court may have upon his rights; but that risk is often preferable to waiting until time and change have deprived the main issue of significance and value. There is little to choose between indefinite delay and absolute denial of right."

No appeal from an interlocutory order shall operate as a supersedeas except on the conditions prescribed by law in cases of appeal from final decrees. No appeal from a final decree shall operate as a supersedeas unless said appeal be taken within the time fixed by law for taking a writ of error *operating as of course as a supersedeas;* or if not taken within that time unless one of the Justices of the Supreme Court shall by order direct the said appeal to operate as to a supersedeas. Sec. 4962 C. G. L. 1927. A writ of error does not operate as a supersedeas as of course unless taken during the session of the court at which the judgment was rendered or within thirty days thereafter, *"if, within said time,* the *plaintiff* in *error,* * * * shall have filed a bond payable to the adverse party" etc. See Sec. 4621 C. G. L. 1927. (Italics supplied.) See Eckman v. Meriam, 32 Fla. 425, 14 South. Rep. 523.

The appeal was not with supersedeas or an order staying further proceedings, therefore the power of the court to proceed with the cause toward an adjudication upon the merits was not affected by the appeal, 425, 14 South. Rep. 41.

Even if the supersedeas was perfected by the execution of the bond, it only had the effect of staying further proceedings but does not interfere with what *has* already been

done.  Thalheim v. Camp Phosphate Co., 48 Fla. 190, 37 South. Rep. 523.

The appeal was not with supersedeas or an order staying further proceedings, therefore the power of the court to proceed with the cause toward an adjudication upon the merits was not affected by the appeal, certainly not until the bond was filed and the order became effective.

The court had proceeded to a final decree nearly two months before the application was made by the defendant for permission to file a supersedeas bond and for an order that all further proceedings be stayed.

The decision of this Court was an unqualified affirmance of the order overruling the demurrer to the bill.  Crichlow v. Maryland Casualty Co., *supra.*

The mandate as incorporated in the transcript does not follow the decision of the court.

There was no appeal from the final decree entered June 10, 1931.  That decree, therefore, was in full force and effect when the Chancellor on February 17, 1932, by order vacated and set aside all "pleadings and proceedings, orders and decrees had in said cause in the Circuit Court between the dates of the entry of the appeal and the filing of the mandate in this cause."

The parties treated the order as valid and on May 30, 1932, the complainant moved for permission to amend its bill of complaint following the application for a receiver heretofore mentioned.  Two answers appear in the record as interposed by the Crichlows, one filed May 2, 1932, and one filed June 20, 1932.

On the 8th day of July, 1932, an order was filed dated June 7, 1932, granting complainant leave to amend its bill of complaint.  The bill was amended by adding the United States of America as a party defendant alleging that it

claimed a United States Income Tax Lien upon the premises, but alleging that such lien was subordinate to the complainant's lien. The answer of June 20, 1932, seems to have superseded the answer of May 2, 1932. The United States answered August 1, 1932.

On June 29, 1932, the complainant moved to strike certain portions of the answer of June 15, 1932, and on the same day complainant filed a counter claim to the answer of June 15th which was filed to the amended bill.

On the 7th of July, 1932, the court denied a motion of the defendants to strike certain portions of the bill and granted the complainant's motion to strike portions of the defendant's answer to the amended bill. To that order the defendants, Crichlow and United States, on August 10, 1932, appealed making the appeal returnable November 1, 1932.

The errors assigned are that the court erred in striking the third, seventh, eighth, and ninth paragraphs of the answer.

No order appears in the transcript that the appeal should operate as a supersedeas, although there appears in the transcript a copy of a bond in the penal sum of one hundred dollars as having been filed October 11, 1932, approved by Honorable W. T. Harrison, Judge of the Circuit Court.

On September 14, 1932, Honorable Armstead Brown of the Court entered an order that the appeal of August 10, 1932, "shall have the force and effect of the order appealed from upon the Appellants giving or causing to be given, a bond executed, conditioned and approved in accordance with law." That order seems never to have been filed and no bond in accordance with its terms appears to have been given.

In the beginning of the foregoing statement of the proceedings taken in this case the writer expressed the thought:

that a chronological account of the events transpiring in the cause might be beneficial. It is doubtful if the statement will serve any purpose other than to show how by filing the transcript of the record with unessential details of court procedure upon which no point is made in the appeal, crowding the transcript with unnecessary documents concerning which no decision of this Court is sought, a transcript may be thrown together without reference to chronological arrangement, increases the labor of this Court, confuses the matter to be considered and enhances the chances for error if indeed it does not drive this Court into the expediency of setting up a kind of substantial justice rule for the settlement of controversies.

The writer doubts if the court has the power to determine the questions presented in the briefs in view of the fact that it was entirely within the power of the lower court to enter the decree of June 10, 1931, finally disposing of the case then submitted and that the decision of this Court on the appeal from the order overruling the demurrer to the bill becomes the law of the case and the order vacating the *pro confesso* and final decrees was not made at the term of the court at which they were rendered and made on no motion or petition but apparently *ex moro motu*.

· After the term of the court at which the decrees were entered the final decree passed beyond the court's control. See Alabama Hotel Co. v. Mott Iron Works, 86 Fla. 608, 98 South. Rep. 825; Sawyer v. Gustason, 96 Fla. 6, 118 South. Rep. 57; Eli Witt Cigar & Tobacco Co. v. Somers, 99 Fla. 592, 127 South. Rep. 333.

The decrees in this case were not made through mistake. No fraud was perpetrated on the court. The order appealed from allowed time for the defendants to answer. The appeal did not operate as a supersedeas and the court pro-

ceeded in an orderly way in accordance with the rules of the court to enter a default for failure to answer and then proceeded to a final decree. The defendants were bound by the Chancellor's order. They knew they had no supersedeas and had notice that the complainant would proceed in the cause as the court had the power to do. The mandate from this court did not follow the decision, which is the law of the case. 13 Ency. Pl. & Prac. 842.

The parties, however, including the court, seemed to construe the mandate as requiring the court to vacate all proceedings and allow the defendants further time in which to answer.

We will discuss, however, the questions presented by the brief. The United States has no brief here in its own behalf. Honorable W. B. Shelby Crichlow signed the brief filed by him as counsel for appellants, but no point is made in the statement of questions involved affecting the claims of the United States as set up in its answer which was filed after the appeal was taken.

The third paragraph of the answer denies defendants' liability for any expenses for procuring an extension of the abstract of title. The striking of that paragraph was not error. The covenant in the mortgage to pay all costs, charges and expenses incurred by reason of the failure of the mortgagors to pay the debt and comply with the covenants covers such an item of expense. See American Securities Co. v. Goldsberry, 69 Fla. 123, 67 South. Rep. 862, 1 A. L. R. 15.

The seventh, eighth and ninth paragraphs of the answer sought to present a defense based upon the proposition that the Maryland Trust Company and Robert Griswold were not empowered to invest their trust funds nor to sell the note and mortgage to the complainant because the assignment to them in 1927 by the Security Bond and Mortgage Company was void as the Maryland Trust Company had no

charter under the laws of Florida and had no authority to act as Trustee; that Griswold had no interest in the transaction and the use of his name was merely for the purpose of lending a color of legality to the transaction and such transaction was contrary to public policy which is shown by Chapter 8531, Sec. 2, Laws of 1921, denouncing as a misdemeanor the act of any corporation attempting to exercise any trust function prescribed by the laws of Florida to be exercised by trust companies or to exercise any of the duties or powers or enjoy any of the emoluments or profits "which may be granted or may have heretofore been granted" to corporations without having first obtained a charter under the laws of Florida "granting the exercise of such powers, duties and functions."

The Act was amended in 1923 by Chapter 9287. It was carried into the Compiled General Laws as Section 6145 under the title of Trust Companies. No penalty is provided by law for a violation of the provisions of the Act. The original Act, Chapter 8531, Sec. 2, provided that any corporation attempting to exercise the functions set forth in Section 1, unless the same shall have been authorized and charter granted, shall be deemed guilty of a misdemeanor and any act performed by them in violation of the provisions of the Act shall be null and void, but the amending Act, Chapter 9287, *supra,* eliminated the criminal feature of a violation of the Act and omitted the provision that any act performed by such corporation in violation of the provisions of the Act should be null and void.

Now the defense attempted to be set up in the paragraphs of the answer under consideration is that a Florida corporation such as the Security Bond and Mortgage Company may not by an agreement with an individual and a foreign corporation not authorized to do business in this State provide for a holding of its mortgage securities in trust by them

and authorize the assignment of such mortgage securities to another foreign corporation because such a transaction violates a public policy indicated by Section 2 of Chapter 8531, *supra*.

The qualifications of the complainant to hold and own the note and mortgage involved in this case are not questioned nor is there any question that the original payee and mortgagee, the Security Bond and Mortgage Company, a Florida corporation, had power and authority to own and possess the note and security, but defendants contend that as the ownership of the note and mortgage passed through trustees, one of whom was a corporation not authorized to do business in this state, the complainant is precluded from enforcing the mortgage lien or the payment of the debt due by the defendants.

Defendants contend that Section 2 of Chapter 8531, *supra*, is in force. That position is unsound because Chapter 9287, *supra*, is an amendment of the entire Chapter 8531, *supra*, and was by the Legislature of 1925 substituted in place of it. No question of repeal by implication is involved because the Act of 1923 shows upon its face that its purpose was to revise the entire subject by substituting the later Act for the former.

This view is not in conflict with the decisions of this Court in St. Petersburg v. Pinellas County Power Co., 87 Fla. 315, 100 South. Rep. 509; Nolan v. Moore, 81 Fla. 594, 88 South. Rep. 601; Dade County v. City of Miami, 77 Fla. 786, 82 South. Rep. 354; Sanders v. Howell, 73 Fla. 363, 74 South. Rep. 802; State v. Gadsden County, 63 Fla. 620, 58 South. Rep. 232; State v. Simpson, 94 Fla. 789, 114 South. Rep. 542, and other causes cited in defendants' brief. The case of St. Petersburg v. Pinellas County Power Co., *supra*, is authority for the doctrine that where a later Act

revises the subject matter of a former Act the later one is alone effective.

The promise of the defendant to pay as evidenced by the note and mortgage to the Security Bond and Mortgage Company was not void, nor does it appear from the stricken portions of the answer that the assignment of the note and mortgage of the original payee and mortgagee to the Maryland Trust Company occurred in this State. The answer avers that the Maryland Trust Company was "transacting business in the State of Florida of which the making of this loan was one of the acts"; but the loan was made by the Security Bond and Mortgage Company and not by the Maryland Trust Company, although there are averments elsewhere in the answer from which it may be inferred that the Security Bond and Mortgage Company, The Maryland Trust Company and Griswold were all involved in an agreement by which the transaction in this case involved all three of them and each was interested. But in any case the Security Bond and Mortgage Company was a Florida corporation and had power and authority to enter into the transaction with the defendant Crichlow and he may not now collaterally attack the validity of the transaction when the security is sought to be enforced by a third person whose ownership of the security is not questioned. The answer therefore is a collateral attack upon the power of an intermediary, a corporation, to acquire the security on the grounds that the same was *ultra vires.* That position is not sound. See Hitchcolk v. Mortgage Securities Corp., 95 Fla. 147, 116 South. Rep. 244.

In that case the court said, speaking through Circuit Judge CAMPBELL, "if we should assume that the trust agreement * * * is *ultra vires,* it could not be set up as a defense to the affirmative relief claimed by the respondent, for the reason that *ultra vires* transaction of a corporation cannot be set

up collaterally by individuals, but such transactions must be attacked directly by the State"; and quoting from authorities approved said: " 'A most important doctrine connected with the validity of corporate transactions, and one which rises above the mere principle of estoppel, is that whether a corporation has acted without authority or has abused its authority or has acted in contravention of law, cannot be set up collaterally by individuals, but can be set up only by the State in a direct proceeding for that purpose.' " 14 A. C. J. 335.

The corporation whose ownership of the note and mortgage and power to transfer them is questioned is a trust company. Such companies are exempted from the provisions of the statute. See Sec. 6032 C. G. L. 1927.

The Act of 1923, Chap. 9287, *supra,* is directed against the exercise of trust functions, now prescribed by law to be exercised by trust companies.

The view of the solicitors for appellees on this point as expressed in their brief is in our opinion the correct one. Even if the Maryland Trust Company, a foreign corporation, undertook under the tripartite agreement to which the Security Bond and Mortgage Company, a Florida Corporation, was a party to hold the securities as Trustee, the assignment to the complainant Maryland Casualty Company under such agreement must in law and equity be considered as the act of the Security Bond and Mortgage Company. It would be estopped in such circumstances to deny the validity of the transfer of its interests to the complainant. That doctrine was announced in Richardson v. South Florida Mortgage Co., 102 Fla. 313, 136 South. Rep. 393, in which it was held that when a corporation not authorized to do business in this State undertakes to act as Trustee for a foreign corporation, and holds certain evidences of indebtedness secured by mortgage in its name as Trustee, the

foreign corporation for whom the properties are held is the real party in interest and should maintain in its own name the suit to enforce the mortgage.

Now the defense set up amounts to this, that because the assignment to Maryland Trust Company, as Trustee, was bad it could transfer no title to the complainant. If that contention is sound then the Security Bond and Mortgage Company is the real party in interest and should bring the suit to enforce the mortgage but the Security Bond and Mortgage Company is estopped to deny the validity of the assignment to complainant by reason of the tripartite agreement. Therefore the complainant is the real party in interest.

We think this disposes of the salient point in the case, and in the view we have of the transaction the decretal order applied from should be affirmed.

It is so ordered.

DAVIS, C. J., and WHITFIELD, TERRELL, BROWN and BUFORD, J. J., concur.

### ON REHEARING.

PER CURIAM.—By an opinion filed herein on November 28, 1933, the decretal order appealed from was affirmed. After that rehearing was granted and reargument had. The basis of such rehearing was the order of this court entered December 11, 1931, in connection with a prior appeal from an order overruling a demurrer to the bill of complaint. See Crichlow v. Maryland Casualty Co., 103 Fla. 267, 137 Sou. Rep. 276. The order of December 11, 1931, amended the judgment of affirmance by giving permission to the defendant to file further pleadings in the cause upon remand to the court below.

Inasmuch as the appeal from the order overruling the demurrer was without supersedeas, the effect of the amend-

ment of December 11, 1931, was to interfere with proceedings that had taken place during the pendency of the first appeal. So the present rehearing was granted to consider further the effect of the order of this court amending its judgment of affirmance as of December 11, 1931.

The lower court in obedience to the mandate of this court issued December 15, 1931, pursuant to the amended judgment of affirmance entered December 11, 1931, vacated all pleadings and proceedings, orders and decrees that had been entered or transpired between the dates of the entry of the first appeal and the filing of the mandate thereon.

The opinion of this Court on the present appeal, as prepared by Mr. Justice ELLIS and filed herein on November 28, 1933, establishes the validity and regularity of the decrees appealed from by the appeal entered August 10, 1932. These decrees were decretal orders striking parts of defendants' answers and overruling their motion to strike parts of the bill of complaint.

Our judgment on this rehearing is that the opinion of Mr. Justice ELLIS heretofore filed in this cause on November 28, 1933, should be adhered to and that an appropriate judgment of the appellate court should be now entered pursuant thereto as the judgment of this Court on rehearing and that the cause should be remanded to the Court below for further proceedings consistent with the judgment and determination of this Court now entered herein.

Previous judgment of Supreme Court adhered to on rehearing.

DAVIS, C. J., ELLIS and TERRELL, J. J., concur.

WHITFIELD, P. J., and BROWN and BUFORD, J. J., concur in the opinion and judgment.

## On Motion to Amend Judgment.

Per Curiam.—This is a motion to amend and clarify the judgment and opinion of this Court filed (on rehearing) June 27, 1934. The Court is asked to determine on the motion what further proceedings shall be taken on the mandate of affirmance in view of the record as it stood in the lower court on the day this court's judgment of affirmance was entered.

The first appeal herein was taken but not superseded until after the lower court had proceeded to a final decree of foreclosure which was entered on June 10, 1931. This foreclosure decree was set aside by the lower court because of the fact that this Court in affirming the decree appealed from had expressly incorporated in its judgment of affirmance an amendment to said judgment to the effect that the appellants, defendants in the lower court, should be permitted to file such further pleadings and proceedings in said cause as they might be advised within such time as might be fixed by the Circuit Court. To give effect to this amendment conditioning as it did the theretofore unconditional judgment of affirmance on the first appeal, the court below vacated its final decree of foreclosure of June 10, 1931, and reopened the pleadings.

The appeal which was last decided by the opinion herein filed on November 28, 1933 (which is the appeal to which this motion relates), in effect recognizes the propriety of the proceedings entertained by the court below after the vacation of its final decree done in order to give effect to a mandate of this Court issued on the decision of this Court rendered on the first interlocutory appeal in this cause. And in affirming the interlocutory order mentioned in this Court's opinion of November 28, 1933, which opinion was adhered to on rehearing, it was not the intention of this

Court to have disregarded the procedure followed in the lower court, but to approve such procedure and hold it to be correct and valid. If there are any expressions contained in the court's opinion of November 28, 1933, which, as re-adopted by this Court on the 27th day of June, 1934 (on rehearing) may be construed or understood to cast doubt upon the propriety of further proceedings to carry this case forward to a new final decree in the court below consistent with the recognized validity and propriety of all that the Chancellor below had done prior to the order of July 7, 1932, last affirmed by this Court in this case, such expressions are to be regarded as recalled and withdrawn by this Court in the premises.

It is ordered that the mandate of this Court when issued, do issue containing a specific direction for further proceedings to be had in the court below consistent with this opinion, and not inconsistent with any of the previous orders and opinions of this Court filed or entered in this cause, as here modified, construed or interpreted pursuant to the motion now before this Court which motion is granted to the extent hereinbefore in this opinoin indicated.

DAVIS, C. J., and ELLIS and TERRELL, J. J., concur.

WHITFIELD, P. J., and BROWN and BUFORD, J. J., concur in the opinion and judgment.