On Petitions for Rehearing
PER CURIAM.
Petitions for Rehearing and for certificate that decision passes upon questions of great public interest denied.
ALLEN, Acting C. J., and ANDREWS, J., concur.
BARNS, PAUL D., Associate Judge, would grant rehearing.
BARNS, PAUL D., Associate Judge.
Appeal No. 4770
Wilson F. Sanborn brought a suit in equity against Walter S. Thomas, R. H. Hall, J. C. Shelton and J. T. Haynesworth seeking a declaratory decree relating to a-voting pool agreement dated February 25, 1959 of stock held by them in the Citizens National Bank of St. Petersburg (hereinafter re'ferred to as the “Bank”), which agreement is hereinafter referred to. as the “first or Five Party Agreement.” A final-declaratory decree was entered on December 30, 1963. Thereupon, on January 14, 1964, Walter S. Thomas entered his appeal from this final decree. We failed to find error, and per curiam affirmed on December 30, 1964.
The “first agreement” (of February 25, 1959) provided that all the common stock of the parties (the plaintiff Sanborn and the above named defendants) which they then owned or might thereafter acquire, would be voted as a unit at all meetings of the stockholders of the Bank and that each owner would be entitled to one vote for each share of stock owned by him; that a meeting of the parties to the agreément might be called by any party on ten (10) days notice, and a vote of a majority of the stock was necessary to any action to be *842 taken, and that no stock could he voted at any time except as a unit; and that the agreement would terminate at the end of ten (10) years. The agreement further provided that it could be terminated upon the written consent of the owners of 75% of stock of the parties.
Thereafter on May 3, 1961, four of the five parties to the “first agreement,” to-wit, Thomas, Hall, Haynesworth and Shelton Xto the exclusion of Sanborn) entered a wpting pool agreement relating to the “first -or Five Party Agreement.” This “second «or Four Party Agreement” provided that in' event of a called meeting of parties to the “first agreement” then the parties to this “Four Party Agreement” would hold prior meetings and determine “how and for whom and for what” all the stock owned by said four parties would be voted, and that it would be voted as a unit at any meeting undér the “Five Party Agreement.”
Both Agreements contained provisions for options to the other parties in event any of the parties to either agreement wanted to sell his shares.
The declaratory decree found that on August 19, 1963, the relative ownership of shares of ‘stock were as follows:
Shares Owned
Wilson F. Sanborn 2,605
R. H. Hall , 8,703
J. T. Haynesworth 5,562
J. C. Shelton 5,562
Walter S. Thomas 10,507
Total 32,939
Of the 102,881 shares of stock of the "“Bank” that were outstanding, these 32,939 shares represent 32% of the total. The shares owned by Thomas, Hall, Haynes-worth and Shelton total 30,334, which is in ■excess of 75% of all the shares of stock ■owned by the parties to “Five Party Agreement.” Furthermore, if the “Four Party Agreement” is abided by and used, it would enable Thomas and any other one party to it to control the unit vote of the “Five Party Agreement;” e. g., Thomas’ 10,507 shares, joined with either Haynesworth or Shelton owning 5,562 shares each, thus making their number of shares equal 16,069 shares, which would control the unit vote of the 30,334 shares under “Four Party Agreement,” and that in turn would control the 32,939 shares bound by “Five Party or First Agreement.” This result would be that less than half of the shares held by the parties could control the vote of all the shares under the “First Agreement.”
The “Five Party Agreement” provides: “This agreement may be cancelled at any time upon the written consent of the owners of seventy-five percent (75%) of the stock of the parties to this agreement.” The parties to the “Four Party Agreement,” according to the record, own more than the 75% specified, and could cancel the agreement. However, to do so would free Sanborn and his 2,605 shares of any obligation to them who are parties to the “Four Party Agreement.” They have not chosen to cancel.
All parties to the “Five Party Agreement” were and are entitled to the free exercise of judgment by each of the other parties. The “Four Party Agreement” (among four of the five parties) wrongfully impairs the right of Sanborn to have his shares, and the shares of the others, voted in accordance with a free vote of a majority, and to give effect to the “Four Party Agreement” would permit the shares of one party to be voted contrary to a free vote of.a majority of the parties to the “Five Party Agreement.”
Restatement on Contracts, Vol. 2, Section 576, p. 1081, states that “A bargain, the making or performance of which involves breach of a contract with a third person, is illegal,” and in Comment “a” thereto, it is stated: “Since breach of a contract is a legal wrong, a bargain that requires for its performance breach of a contract with *843 another, is opposed to public policy.” A mere breach of a contract does not offend public policy even though it is legally wrong, but a contract that contravenes the known contractual rights of a third party borders on being a contract to commit a wrong and is against public policy. Prosser on Torts, 3rd Ed., § 123, p. 955, note 77.
The “Four Party Agreement,” as related to the “Five Party Agreement,” is illegal as against public policy and is of no force and effect, and the final decree appealed from should be
Affirmed as modified by this Opinion.
Appeal No. 4783
The prime question on this appeal is whether the trial court erred in holding that additional shareholders of the Bank could not add their names to the “Five Party Agreement” dated February 25, 1959.
The final decree was entered on December 30, 1963, and thereafter R. H. Hall gave notice of a call of a meeting of the parties to the “First Agreement” for January 13, 1964, for the purpose of determining the vote of the shares of parties at the annual stockholders meeting of the Bank to be held on January 23, 1964.
Prior to January 13, 1964, approximately 56 other stockholders of the Bank owning approximately 18,970 shares of stock of the Bank executed and gave to appellants Morgan L. Smith, Norman B. Smith and David Coates powers of attorney and proxies authorizing Messrs. Smith, Smith and Coates to sign, as parties thereto the “First Agreement” dated February 25, 1959. Smith, Smith and Coates purported to have effectively executed the “First Agreement,” and appeared at the meeting called by Hall and asserted their right to vote the stock of the 56 other stockholders as parties to the agreement.
The Hall-Sanborn group ruled that the adding of the names to the “First Agreement” was ineffectual and passed resolutions as to the manner of their vote at the ensuing annual stockholders meeting. Thereupon, the Smith, Smith and Coates group, together with Thomas and Haynesworth, contended the added names were effectual and passed resolutions in conflict with those passed by the Hall-Sanborn group.
Sanborn and Hall each filed a Petition for Supplemental Relief, and Sheldon in response to Thomas’ Petition for Rehearing sought similar supplemental relief. The supplemental relief sought by these was to have the court enter a supplemental decree holding that the adding of names by Smith, Smith and Coates was of no force and effect, and that there were then no parties to the “First Agreement” except the original five parties. A rule to show cause was issued and served on Thomas, Haynesworth and Smith, Smith and Coates. On January 18, 1964, after a hearing upon the petitions and returns, a supplemental decree was entered granting supplemental relief. Thereupon, Thomas, and Smith, Smith and Coates filed their notice of appeal from this supplemental decree on the same day. .We found no reversible error, and affirmed per curiam on December 30, 1964.
Appellants make a point that the lower court was without jurisdiction to enter the supplemental decree for the want of jurisdiction by reason of the previous appeal. Appellant Thomas filed a timely motion for rehearing on January 9, 1964. Hall served' his petition for supplemental relief on January 14, 1964, and Sanborn served his petition for like relief on January 15, 1964. The appeal from the final declaratory decree-of December 30, 1963 was entered January-14, 1964, the same day that Hall served his petition. It does not appear that the-appeal was taken before the service of.' Hall’s petition, and if not the case, undoubtedly, was still pending when Hall’s petition was served. The supplemental decree was entered January 18, 1964.
*844 After a timely appeal, the subject matter of the appeal is in the exclusive jurisdiction of the appellate court, and the lower court has no authority to do anything that would interfere with the appellate court’s jurisdiction of such subject matter. However, in this case the lower court’s supplemental decree did nothing to interfere; it only entered an order adding to the prior relief, germane to the prior decree based on new facts occurring after its entry. We find the lower court had jurisdiction to hear and determine the petitions for supplemental relief. The appellate court’s jurisdiction is exclusive only as to the subject of appeal. Crichlow v. Maryland Casualty Co., 116 Fla. 226, 156 So. 440; Crichlow v. Maryland Casualty Co., 116 Fla. 226, 159 So. 899.
Appellants’ contention is that the “First Agreement” was an open-end agreement, permitting other stockholders from time to time to join the original signers and be bound by it as were the original ones who signed it. However, when it is considered that no original signer did anything for more than five years inconsistent with its being a closed agreement among the original parties, and when it is further noted that the “Second Agreement,” by four of the original five parties with more than 75% control, is consistent with its not being an open-end agreement, it is my conclusion that it was not the intention of the original signers of “First Agreement” that any shareholder would thereafter have a right to become a party to the agreement at will. The chancellor did not err in holding that the additional shareholders represented by Smith, Smith and Coates had no rights under the “First Agreement,” dated February 25, 1959.
The decree appealed should stand affirmed.
I would grant the petitions for rehearing for clarification,.