184 So.2d 897 (1966)
Margaret LAING, Appellant,
v.
GAINEY BUILDERS, INC., a Florida Corporation, et al., Appellees.
Nos. G-181, G-182.
District Court of Appeal of Florida. First District.
April 7, 1966.
*898 Moore & Wood, Ormond Beach, for appellant.
M. Dean Nelson, Daytona Beach, and Gillespie, Gillespie & Hall, New Smyrna Beach, for appellees.
CARROLL, DONALD K., J.
The plaintiff in two mortgage foreclosure suits has appealed from the final summary decrees entered therein by the Circuit Court for Volusia County in favor of the defendants.
The principal question presented for our determination in this appeal is whether a person who has held a note and mortgage but has assigned and delivered them to another person as collateral security retains sufficient ownership and control of the note and mortgage to accelerate payment and file suit for foreclosure on default in payment when such foreclosure is without the knowledge and consent of the collateral assignee, the then holder of the note and mortgage, or whether the said collateral assignee must bring the suit.
The basic facts pertinent to this inquiry are as follows:
In 1962 the defendant Gainey Builders, Inc., a Florida corporation, was the owner of the subject property, lying in Volusia County, being indebted to one Leila D. Hurst, executed and delivered to her its promissory note in the principal amount of $23,805 and also executed and delivered to her a mortgage on the said property as security for the payment of this note. Several months later the said Leila D. Hurst, for a valuable consideration, assigned the said mortgage to the plaintiff, Margaret Laing, and endorsed to her the said note.
Almost a year later and prior to the said note's maturity the plaintiff, joined by husband, for a valuable consideration assigned and delivered the said mortgage to S.A. McDaniel and Ruby McDaniel, his wife, and also endorsed over and delivered to them the said note as collateral security. So far as the question before us is concerned, the critical provisions of the said assignment of mortgage (in which the plaintiff is the party of the first part and the McDaniels constitute the party of the second part) are as follows:
"This Assignment is collateral security for a $15,000.00 note dated October 3, 1963, and an additional $15,000.00 note dated November 26, 1963, executed by Party of the First Part to Party of the Second Part, and this mortgage will be reassigned by Party of the Second Part to Party of the First Part when both of the aforesaid $15,000.00 notes, respectively, together with all interest due thereon, have been paid in full, and Party of the First Part specifically authorizes and instructs Party of the Second Part to release lands under said mortgage when payments are made, as provided for in said mortgage; provided, however, only such payments received on the said note and mortgage held as collateral security that may be in excess of the regular annual payment as provided for in said note and mortgage shall be paid to Party of the Second Part to discharge the aforesaid two $15,000.00 promissory notes, respectively; it being agreed and intended by the parties hereto, that the regular annual payment pertaining to the said note and mortgage shall be paid to the Party of the First Part."
In the meantime the defendant Gainey Builders, Inc. had conveyed its title to the subject property by warranty deed to the defendant Gordon v. Astle, subject to the above note and mortgage, and Astle and his wife executed to the said Gainey Builders, Inc., a purchase-money second mortgage on the subject property. Other subordinate mortgages were also executed covering the said land.
*899 In 1964 the plaintiff filed the instant suits to foreclose the mortgage she had assigned as collateral security to the McDaniels, as above discussed, without demand or notice to anyone, upon the basis of a default in the payment of the second installment due under the mortgage and note sued upon. The assignees and holders of the said note and mortgage, the McDaniels, did not join in these suits when filed by the plaintiff, never did any act to accelerate the amount due under the note, and knew nothing about the suits when they were filed by the plaintiff.
On the basis of affidavits filed by the parties establishing the above facts, the chancellor entered the final summary decrees appealed from herein, in favor of the defendants. These appeals by the plaintiff followed.
The plaintiff-appellant's chief contention in this appeal is that the above-quoted provisions of the assignment to the McDaniels "means that ownership was retained by the plaintiff so as to authorize her to foreclose in her own name only without the knowledge of the assignees," since she retained such ownership "by virtue of the facts that the assignment to the McDaniels was for collateral security." In her appellate brief, however, she admits that an exhaustive research of the Florida law had revealed no Florida case wherein an assignor in a collateral assignment situation had brought a suit to foreclose a mortgage, the principal reason for this being that "most assignments as collateral security are absolute on their face and the instruments in question are delivered to the Assignee which is usually an institutional lender." The appellant does, however, cite five cases from other jurisdictions which, she claims, support her said contention.
On the other hand, the appellees-defendants contend in their appellate brief that the weight of authority in the United States is that the assignee of a mortgage and note assigned as collateral security is the real party in interest, that he holds the legal title to the mortgage and note, and that he, not the assignor, is the proper party to file a suit to foreclose the mortgage. We agree that such is the weight of authority and, further, that the said rule prevails in Florida.
The general rule as to the rights of the assignee of a mortgage for collateral security is set forth in 37 Am.Jur., Mortgages, Sections 1273, page 467, as follows:
"In the case of a payment of a mortgage securing a negotiable instrument, the rule supported by the great weight of authority is that the rights of the parties thereto, as well as of third persons, are governed by rules relating to negotiable paper. Under this rule, the maker of a negotiable note secured by mortgage cannot discharge his liability by payment to one not the holder or authorized by the holder to receive payment, and a mortgagor is not justified as against an assignee of the mortgage in making payments to a mortgagee who does not have possession of the instrument, unless payment is induced by direction from the owner, or by the misleading actions of the latter. In such case the mortgagor is not entitled as against the assignee to credit for his payment. This rule obtains whether the assignment is absolute or for collateral security."
On the related subject of the payment of a negotiable instrument to the pledgee of the instrument, the general rule is stated in 11 Am.Jur.2d, Bills and Notes, Section 983, page 1033, as follows:
"Payment to a person having no right to receive the money does not discharge the obligation. The rule as to the payment and discharge of negotiable instruments is that payment of the bill or note must be made to the rightful holder or his authorized agent. It is payment in due course which discharges an instrument under the NIL, and one of the elements of payment in due course is payment to the holder of the instrument, that is, to the payee or indorsee of the instrument *900 who is in possession of it, or the bearer thereof. This includes an indorsee under either a restrictive or a conditional indorsement, since the statute provides that restrictive indorsement confers upon the indorsee the right to receive payment of the instrument and that where an indorsement is conditional, a party required to pay the instrument may make payment to the indorsee or his transferee. `Holder' for the purpose of payment also includes a pledgee of the instrument."
The foregoing two general rules quoted from American Jurisprudence seem to us to be wholly in harmony with the holdings of the Supreme Court of Florida. For instance, in Gables Racing Ass'n, Inc. v. Persky, 116 Fla. 77, 156 So. 392 (1934), our Supreme Court held:
"The indorsement and delivery of negotiable paper as collateral security before maturity passes the legal title to the holder, with power to collect by suit or otherwise, subject to the rights of the indorser as to the application of the proceeds, and thereby the right of the pledgor to recover on such paper is necessarily suspended." (citing numerous authorities.)
With regard to payment to the assignor when the assignment is for collateral security, the Florida Supreme Court held in Withers v. Sandlin, 36 Fla. 619, 18 So. 856 (1896), an action by the assignee of a claim assigned to him by one Carter:
"The assignment undoubtedly shows that the legal title to the claim sued upon was in the plaintiff. We think that he was such a real party in interest as could maintain the action under our statute. Acts 1881, c. 3241, § 1; McClel.Dig. p. 829, § 72; Rev.St. § 981. The fact that the plaintiff might be liable to account for the proceeds, or to pay some of them over to the assignor, does not prevent him from maintaining the suit. The proper application of the proceeds may some time become a question between the plaintiff and the assignor, but, in the absence of any allegation of fraud or bad faith in making the assignment, cannot be a matter affecting any right of the defendant. Jones, Pledges, § 664 et seq.; Bank of Lafayette v. Bruff, 33 La. Ann. 624. Minnesota has a statute almost identically, in terms, like ours. A case arose in that state where a promissory note, payable to order, was transferred, after maturity, without indorsement by the payee, as collateral security for the payment of a debt. The court held that under the statute the pledgee of the note could maintain an action thereon in his own name. White v. Phelps, 14 Minn. 27 (Gil. 21). The terms of the assignment, which have been quoted above, and the evidence in reference to the same, show that the very object and purpose of the transfer of the account by Carter to the plaintiff was that he might collect the money thereon to pay the debt due him by Carter, and that he might take any action necessary for that purpose, including the bringing of suits. We think that under this evidence the plaintiff acquired such ownership and property in the claim as to constitute him a real party in interest, with the right to enforce payment of the claim by a suit at law."
Under the decisional law of Florida, then, as well as the general rule recognized in other jurisdictions, we think that the plaintiff, having assigned the subject mortgage and note to the McDaniels, was not entitled to file the instant mortgage foreclosure suits in her own name alone, and, in our opinion, no provision in the said assignment instrument alters that consequence.
The other points raised by the appellant in the appeal have been considered and found to be without substantial merit.
Therefore, we think that the chancellor was eminently correct in entering the final *901 summary decrees appealed from herein, and those decrees must be and they are
Affirmed.
WIGGINTON, Acting C.J., and STURGIS, J., concur.