799 So.2d 301 (2001)
A & B DISCOUNT LUMBER & SUPPLY, INC., Appellant,
v.
James R. MITCHELL, Trustee, Appellee.
No. 5D00-215.
District Court of Appeal of Florida, Fifth District.
October 5, 2001.
*302 William N. Asma, P.A., Winter Garden, for Appellant.
John C. Reber of Rush, Marshall, Reber and Jones, P.A., Orlando, for Appellee.
PALMER, J.
In this mortgage foreclosure proceeding, A & B Discount Lumber & Supply, Inc. (A & B) appeals the final summary judgment entered by the trial court in favor of James R. Mitchell, Trustee (Mitchell). Concluding that none of the defenses pled by A & B set forth a valid defense to Mitchell's foreclosure claim, we affirm the final summary judgment entered thereon. However, concluding further that A & B's counterclaim which sought to recover the rents collected by Mitchell during A & B's ownership of the subject property properly set forth a cognizable cause of action, we reverse the trial court's dismissal thereof and remand this matter with instructions to reinstate same.
The evidence of record demonstrates that on June 7, 1996, Jolly Brothers borrowed funds from Waters Mortgage Corporation and secured the loan by placing first mortgages on sixty-four condominium units located in Magnolia Park Villas. The mortgages were recorded June 19, 1996 and then assigned to Guaranty Federal Savings, Inc. (Guaranty Federal).
Thereafter, during the time period between July and October of 1996, A & B supplied lumber and building materials to Magnolia Park Villas pursuant to a contract executed by Jolly Brothers. Unfortunately, the mortgages went into default for non-payment on October 1, 1996, and, by that time, A & B was owed $60,000 for materials sold and delivered to the property. In an effort to receive payment thereon, A & B filed a claim of lien against the property.
In December 1997, Guaranty Federal and Mitchell executed a purchase note and sale agreement. As a result of the transaction, Mitchell became the owner of the mortgage notes. One month later, special warranty deeds were executed by the owner of Magnolia Park Villas and ownership *303 of the units was conveyed to Mitchell. The deeds recited the fact that the mortgage indebtedness on the units had been previously assigned to Mitchell, and language in the special warranty deeds recited that Mitchell took ownership of Magnolia Park Villas without disturbing the mortgage indebtedness.[1]
In the meanwhile, A & B pursued its action to foreclose its construction lien. On May 12, 1999, A & B received a certificate of title to the sixty-four units as a result of those proceedings.
A & B immediately filed a demand against Mitchell for payment of the rents which he had received during the pendency of its foreclosure suit, as well as for possession of the sixty-four units. In response, Mitchell filed a complaint against A & B seeking to foreclose the mortgages on each of the units based on the defaults in payment which dated back to October 1996. An injunction was thereafter issued which prevented the rents which had been collected by Mitchell from being turned over to A & B. A & B filed several affirmative defenses to Mitchell's foreclosure suit, as well as a counterclaim which sought recovery of the rents which had been collected during the time period A & B held title to the property.
On October 25, 1999, the trial court conducted a hearing on several pending motions. During the hearing the court struck some of A & B's affirmative defenses and dismissed its counterclaim. The court also issued an order granting A & B's motion to compel discovery from Mitchell by December 6, 1999.
While not complying with the court's discovery order, Mitchell immediately moved for entry of summary judgment on its foreclosure suit. The motion was heard by the court on December 16, 1999, at which time the court granted the motion. A final judgment of foreclosure was thereafter entered on February 7, 2000.
A & B appeals arguing initially that the trial court's ruling on Mitchell's motion for summary judgment was premature in light of the fact that discovery had not yet been completed. See Robson v. Haines, 634 So.2d 831 (Fla. 5th DCA 1994). However, that general principle of law applies only when future discovery might create a disputed issue of material fact. Stated another way, when the non-moving party seeks to undertake discovery in support of a position which is not legally valid, it is not improper for the trial court to enter summary judgment before that discovery is complete. Here, A & B asserted four defenses to Mitchell's foreclosure action, yet none of them presented a valid defense. Therefore, the court's ruling in favor of Mitchell was not premature.
A & B's first affirmative defense alleged that the claimed mortgage default should have been deemed to be sham and, as a matter of equity, Mitchell's claim for *304 foreclosure disallowed because during the default period Mitchell simultaneously held the mortgage, and owned and controlled the property by collecting rents thereon. More specifically, A & B asserted that the non-payment of the mortgage debt, which constituted the underlying basis for Mitchell's mortgage foreclosure action, was the direct result of Mitchell's conscious decision not to use the rent monies which he had collected on the units to make the mortgage payments when they became due. However, it is undisputed that the mortgage default occurred before Mitchell took ownership of either the mortgage notes or the mortgages. Accordingly, Mitchell's decision concerning how he used the rent monies once he became the owner of the property could not have constituted a viable defense to the foreclosure action.
A & B also asserted that a disputed issue of material fact existed, or could have been discovered, with regard to its affirmative defense of "estoppel from inaction." The basis of that alleged defense was A & B's claim that Mitchell should have been estopped from asserting a claim for foreclosure because he did not file suit until more than two and one half years after the mortgage went into default. However, since the alleged default occurred in October of 1996, and A & B supplied its material to the property between July and October of 1996, A & B can not demonstrate any prejudice resulting from Mitchell's delay in filing suit.
A & B further contended that Mitchell's purchase of the notes and mortgage during the period of time when A & B was in the process of foreclosing on its construction lien provided a valid basis for asserting an estoppel defense based upon Darling v. Kagan, 133 So.2d 599 (Fla. 2d DCA 1961), cert. denied, 138 So.2d 333 (Fla.1962). However, Darling involved alleged knowledge by the mortgage holder of services provided to the property prior to the date of the first mortgage. No such allegation is contained in this case and, therefore, Darling is not applicable.
A & B lastly averred the affirmative defense of merger. Such a defense was not available to A & B because the deed which conveyed the property to Mitchell contained specific language evidencing Mitchell's intent not to merge the legal and equitable estates. A & B maintains that, in spite of that express language, it should have been permitted to undertake additional discovery to determine whether the facts surrounding the transactions contradict that expressed intention. We disagree. A merger will not be held to take place if merger was not the intention of the owner. See Walter J. Dolan Properties, Inc. v. Vonnegut, 133 Fla. 854, 184 So. 757 (1938). Since Mitchell, as the owner of the property, expressed in writing his clear and unambiguous intent that a merger not take place, A & B could not, by way of parol evidence, contradict that unambiguous written expression. Having concluded that the trial court properly determined that none of A & B's affirmative defenses presented a valid defense, we affirm the summary judgment entered in favor of Mitchell on his foreclosure claim.
However, concerning A & B's claim that the trial court erred in dismissing its counterclaim against Mitchell for rents, we agree that the court erred in so ruling and that reversal is warranted on this issue. A & B's counterclaim alleged that, pending disposition of Mitchell's foreclosure suit, A & B owned the property, having received ownership as a result of the disposition of its earlier construction lien suit. The counterclaim alleged further that, as a result of such ownership, A & B possessed the superior right to receive the rents *305 collected by Mitchell during that ownership period. Such allegations sufficiently stated a cause of action for rent. Accordingly, we reverse the trial court's dismissal of A & B's counterclaim and remand this matter with instructions to reinstate same.
AFFIRMED in part, REVERSED in part; and REMANDED for further proceedings.
PETERSON, J., concurs.
SHARP, W., concurs in part and dissents in part, with opinion.
SHARP, W., J. concurring in part, dissenting in part.
In my view, the facts, status, relative rights and equities of the two parties in this case,[1] are so unclear, partially due to Mitchell's failure to respond to A & B's discovery requests, that summary judgment against A & B is unjustified at this point on its defenses to Mitchell's foreclosure suit. I agree that clearly A & B should be permitted to pursue its counterclaim for rents, as provided in the majority opinion.
In July and October of 1996, A & B furnished lumber and building materials to a rehabilitation project consisting of sixty-four condominium units named Magnolia Park Villas, pursuant to a contract with the owner, Jolly Brothers, Inc. At some point, Magnolia Properties South, Inc. became the owner of the sixty-four units. It intended to sell the units to low-income families, in conjunction with a much larger number of units, but the plan was never completed and the sixty-four units remained rental properties.
On June 7, 1996, Jolly Brothers borrowed funds from Waters Mortgage Corporation, secured by separate first mortgages on each unit, with a separate promissory note for each. The mortgages were apparently recorded June 19, 1996, and then assigned to Guaranty Federal Savings, Inc. as part of a ten million dollar warehouse credit agreement and master note, although they were not evidenced in the record. The mortgages went into default for non-payment on October 1, 1996.
A & B filed a claim of lien on October 21, 1996, seeking to foreclose its $60,000 construction lien on the Villas. It filed an amended claim January 3, 1997, naming Jolly Brothers, World Outreach and Waters Mortgage, but it failed to file a lis pendens.
On December 23, 1997, Guaranty Federal executed a purchase note and sale agreement to Mitchell, Trustee. Thus Mitchell became owner of the mortgage notes.
On January 29, 1998, Guaranty Federal assigned the sixty-four mortgages to Mitchell, and the assignments were recorded on February 4, 1998. However, the record only evidences an assignment by Mitchell to James E. Perry Company on those dates. On March 10, 1998, Magnolia executed special warranty deeds to the Villas to Mitchell. They recite that the mortgage indebtedness on the units had been previously assigned to Mitchell. They were recorded on April 27, 1998. However, A & B was unaware that Mitchell had acquired ownership of the units.
Language in the special warranty deeds recites that Mitchell took ownership of the property without disturbing the mortgage indebtedness:

*306 It is the intent of both the Grantor and the Grantee that the conveyance of this deed of the fee simple title to each of the condominium unit [sic] to James R. Mitchell, as Trustee, shall not operate to extinguish or satisfy or cancel or discharge the first mortgage encumbering each of such condominium units, or the indebtedness respectively secured by each mortgage. And it is the intent of Grantor and Grantee that there shall be no merger of the first mortgage encumbering each condominium unit and the fee simple title to each such condominium unit and that each first mortgage and the respective debt secured by each first mortgage (as evidenced by separate notes) which notes and mortgages are owned and held by the Grantee, shall survive this deed and shall continue to exist as they were prior to this deed as a[sic] valid debts and first mortgage liens on the respective condominium units conveyed herein. (Emphasis added)
Mitchell purchased each unit for $10.00 and the mortgage indebtedness on each unit was from $47,000 to $49,000.
On May 12, 1999, A & B received a certificate of title to the sixty-four units in the lien foreclosure suit. It filed a demand for payment of rents received and for possession of the units. On May 20, 1999, Mitchell filed a complaint seeking to foreclose the mortgage on each unit against A & B, alleging that A & B as owner, had defaulted in paying the mortgage notes.
Mitchell claimed ownership of the notes and mortgages due to the assignment to him by Guaranty Federal. However, he had assigned them to James E. Perry under a collateral assignment dated January 9 or 12, 1998, and recorded February 4, 1998. The document is, for the most part, unreadable in the current record before us. The assignment of the mortgages was a condition for a loan Perry made to Mitchell for $780,000, evidenced by a promissory note, and governed by a loan agreement, neither of which are in the record. The collateral assignment provides:
NOW THEREFOR, in consideration of the loan and to assure the payment of the Note and the Assignor's [Mitchell] obligations under the Loan Agreement and as an essential integral part of the security therefor, and for other valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Assignor [Mitchell] does hereby immediately and absolutely sell, assign, transfer and set over unto the Assignee [Perry] its successors and assigns, all right, title, and interest and all benefits and privileges which the Assignor as owner and developer has and may have in, from or with respect to any and all of the Collateral, hereinafter defined, including without limitation, all of the rents, issues, income, revenue and profits due and becoming due therefrom.

The items which shall be the subject of this Assignment, and which are sometimes collectively referred to as `Collateral,' are the Collateral Notes and the Collateral Mortgages as defined above along with all of the rights and privileges of Assignor as the holder thereof; and any and all loan documents held by Assignor in connection therewith. (Emphasis added)
Specifically listed, in part, are contracts, and the Assignor's Limited License. The remaining items are unreadable. However, the Assignor's [Mitchell] Limited License is defined as:
So long as no default or Event of Default, or event which with notice or lapse of time or both would constitute an Event of Default, by the Assignor under the Notes, Loan Agreement, or any Collateral has occurred, the Assignor shall *307 have the right under a license granted hereby (but limited as provided in the assignment) to retake, use and enjoy the benefits and privileges of the Collateral, provided that a portion of any and all income received by Assignor shall be due and payable to Assignee pursuant to the Loan Agreement. After the occurrence of an Event of Default for an event which with notice or lapse of time or both would constitute such an Event of Default, Assignee may enforce this Assignment, with or without any order of any court and with or without appointment of a receiver, as permitted by applicable law, and any and all rents, issues, income, revenue and profits received by Assignor shall whereupon be held in trust as security for Assignor's obligations hereunder and under the Note and Loan Agreement. (emphasis added)
Thus, by virtue of the Collateral Assignment, it appears that Mitchell had only a license to "retake, use and enjoy the benefits and privileges of the Collateral" (i.e., the notes and mortgages), so long as he paid a portion of the rents to Perry.
Mitchell's complaint specifically stated he was the present owner of the notes and mortgages, that he executed and delivered a Collateral Assignment of the notes and mortgages to Perry, that Mitchell was not in default under the Collateral Assignment, and that record title to the units had vested in A & B pursuant to the Certificate of Title it had obtained on May 12, 1999. It does not provide that he merely held a license to the use and enjoyment of the notes and mortgages, nor does it reveal that he had a claim to the fee also. The record before us does not support those claims. Perry was apparently not a party to the lawsuit and its status is therefore uncertain.
The record in this case, as noted above, is confusing and as it stands, because it does not clearly establish Mitchell's right to foreclose as owner or holder of the mortgages in question. Further, it is apparent that discovery for A & B was not complete at the time summary judgment was rendered. When discovery is not complete, it is premature to grant summary judgment. A & B Pipe and Supply Co. v. Turnberry Towers Corp., 500 So.2d 261 (Fla. 3d DCA 1986).
The documents A & B sought by discovery and did not receive, were important in order to establish its affirmative defenses; estoppel, waiver, failure to name indispensable parties, failure of consideration, laches, and set off. For example, A & B requested a copy of the agreement wherein Mitchell is named as Trustee. It also requested closing documents, receipts, checks and other evidence of payment concerning the transfer from Magnolia properties to Mitchell. Without these documents, A & B could not learn who the beneficiaries were under the trust agreement. If it appears Mitchell or the beneficiary of the trust owned or controlled Magnolia Properties before Mitchell received the notes and mortgages by assignment and property by deed, it would bear on A & B's defense of estoppel to the mortgage foreclosure action.
The record itself reveals the lack of clarity of factual evidence before the trial court. There is no evidence that Mitchell was, in fact, the trustee of any trust, and the complexity of the transactions between the various successive owners and creditors impacted A & B's ability to defend itself. For example, the collateral assignment from Mitchell to Perry appears to show that Mitchell assigned any right he had in the notes and mortgages to Perry at the time he brought the foreclosure suit. If so, he was not the real party in interest.
The assignee of a mortgage and note assigned as collateral security is the real *308 party in interest. Laing v. Gainey Builders, Inc., 184 So.2d 897 (Fla. 1st DCA 1966). Once the mortgagee pledges a mortgage as collateral, it is divested of the power to foreclose. Smith v. F.D.I.C., 61 F.3d 1552 (11th Cir.1995) (determining Florida law citing Laing). In such instances, a mortgagee has no standing to bring a foreclosure suit. See Crichlow v. Maryland Casualty Co., 116 Fla. 226, 156 So. 440 (1933) (mortgagee is estopped to deny validity of assignment of mortgage and note; assignee is real party in interest).
I therefore conclude that summary judgment was prematurely granted. See Holl v. Talcott, 191 So.2d 40 (Fla.1966); Villages at Mango Key Homeowners Assoc., Inc. v. Hunter Development, Inc., 699 So.2d 337 (Fla. 5th DCA 1997); ACT Corp. v. Devane, 672 So.2d 611 (Fla. 5th DCA 1996), superceded by rule on other grounds, Stucki v. Hopkins, 691 So.2d 560 (Fla. 5th DCA 1997); UFF DAA, Inc. v. Towne Realty, Inc., 666 So.2d 199 (Fla. 5th DCA 1995).
NOTES
[1] The language read as follows:

It is the intent of both the Grantor and the Grantee that the conveyance of this deed of the fee simple title to each of the condominium unit [sic] to James R. Mitchell, as Trustee, shall not operate to extinguish or satisfy or cancel or discharge the first mortgage encumbering each of such condominium units, or the indebtedness respectively secured by each mortgage. And it is the intent of Grantor and Grantee that there shall be no merger of the first mortgage encumbering each condominium unit and the fee simple title to each such condominium unit and that each first mortgage and the respective debt secured by each first mortgage (as evidenced by separate notes) which notes and mortgages are owned and held by the Grantee, shall survive this deed and shall continue to exist as they were prior to this deed as a[sic] valid debts and first mortgage liens on the respective condominium units conveyed herein.
(Emphasis added).
[1] A & B Discount Lumber and Supply, Inc. (A & B) and James R. Mitchell, Trustee, (Mitchell).